RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0341p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VITORE RRESHPJA,

*Petitioner,*

*v.*

No. 04-3808

ALBERTO GONZALES, Attorney General of the
United States,

*Respondent.*

---

On Petition for Review from a Final Order
of the Board of Immigration Appeals.
No. A95 451 765 Detroit

Argued: July 22, 2005

Decided and Filed: August 15, 2005

Before: KENNEDY, CLAY, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. Shelley Goad, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. Shelley Goad, Linda S. Wendtland, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Vitore Rreshpja is a citizen of Albania who was born in 1982. She arrived in the United States in November of 2001 with a fraudulently obtained nonimmigrant visa after an unknown man attempted to abduct her in her home country. The Immigration and Naturalization Service (INS) initiated removal proceedings against her several months later. At a hearing before an immigration judge (IJ), Rreshpja requested a grant of asylum or, in the alternative, the withholding of removal and protection under the Convention Against Torture (CAT). She claims that she is at risk of being forced to work as a prostitute if she is returned to Albania. The IJ denied her application. Rreshpja appealed the denial to the Board of Immigration Appeals (BIA), which affirmed the IJ's decision without issuing its own opinion on the matter. She then timely appealed to this court. For the reasons set forth below, we **DENY** Rreshpja's petition for review of the decision by the BIA.

1

# I. BACKGROUND

Rreshpja grew up in the town of Shkoder in northern Albania. She attended high school in Tirana, the country's capital city, where she lived with her aunt. Her parents and younger brother remained in Shkoder.

In June of 2001, an unknown man attempted to abduct Rreshpja as she was walking home from school. She managed to escape. As she ran away, she heard her attacker say that she should not get too excited because she would end up on her back in Italy, like many other girls. She understood that statement to be a threat that she would be kidnapped and forced to work as a prostitute.

Rreshpja and her aunt reported the incident to the local police, but the police told Rreshpja that the information she had provided was insufficient to identify or arrest the man who had attacked her. Fearful for her safety, Rreshpja's family made arrangements for her to stay with her older brother, who lived in Howell, Michigan. They obtained an F-1 nonimmigrant visa for her to enter the United States. When she attempted to enroll at Michigan State University after arriving in this country, however, she was informed that the documents that had been used to obtain her visa were fraudulent.

The INS (now the Department of Homeland Security) initiated removal proceedings against Rreshpja in June of 2002. At a hearing before an IJ in Detroit, Rreshpja conceded that she had been admitted to the United States without a valid nonimmigrant visa, but she submitted an application for asylum, the withholding of removal, and protection under the CAT, claiming that she risked being forced into prostitution if she were required to return to Albania. The IJ denied Rreshpja's application. Rreshpja appealed the denial to the BIA, which affirmed the IJ's decision without issuing an opinion. She then timely filed a petition for review by this court.

# II. ANALYSIS

## A.     Standard of review

Because the BIA affirmed the decision of the IJ without issuing an opinion, we review the decision of the IJ directly. *See Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003) ("When the Board adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the final agency decision."). "[I]n order to reverse the BIA's factual determinations, [we] must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (emphasis in original).

## B.     The IJ did not err in denying Rreshpja's application for asylum, the withholding of removal, and protection under the CAT

Rreshpja claims that she is entitled to a grant of asylum or, in the alternative, the withholding of removal and protection under the CAT. She contends that the IJ's opinion contains errors of law and fact regarding her claims.

### 1.     *Asylum*

Rreshpja argues that she faces persecution because she is an attractive young woman who risks being kidnapped and forced into prostitution if she returns to Albania. The IJ rejected this argument on the grounds that (1) the "social group" as defined by Rreshpja is not cognizable under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(42)(A), and (2) even assuming that such a social group exists, Rreshpja failed to demonstrate that her attempted kidnapping in June of 2001 or her fear of being forced into prostitution if she is returned to Albania was the result of

membership in that social group as opposed to the unfortunate consequences of widespread crime in Albania.

Pursuant to the INA, an applicant for asylum must show that she is a "refugee." 8 U.S.C. § 1158(b). A refugee is an individual who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant claiming to be a refugee must present specific facts demonstrating that she suffered past persecution or that she has a well-founded fear of future persecution. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that the "BIA's determination that Elias-Zacarias was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole") (citation and quotation marks omitted). If the asylum applicant satisfies her burden of establishing past persecution, "she is presumed to have a well-founded fear of [future] persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (citing 8 C.F.R. § 208.13(b)(1)(i)). The INS may rebut that presumption by establishing, by a preponderance of the evidence, that conditions in the applicant's country have changed since the time of the persecution to such an extent that the applicant no longer has a well-founded fear of being persecuted if she were to return. *Mikhailevitch*, 146 F.3d at 389.

An applicant's fear of persecution must be both subjectively genuine and objectively reasonable. *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). She must therefore "actually fear that [she] will be persecuted upon return to [her] country," and she must demonstrate "an 'objective situation' under which [her] fear can be deemed reasonable." *Id.* (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987)).

The BIA has defined a "social group" to be "a group of persons all of whom share a common, immutable characteristic." *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) (holding that a Salvadoran taxi cooperative did not constitute a particular social group, even though the members were being persecuted for refusing to participate in work stoppages, because the drivers could escape persecution by changing jobs), *overruled on other grounds by In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). "[W]hatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Acosta*, 19 I. &. N. Dec. at 233; *see also Castellano-Chacon v. INS*, 341 F.3d 533, 546, 549 (6th Cir. 2003) (adopting the BIA's definition of a "social group," and holding that tattooed youth fall outside of that definition). The BIA, however, has never held that an entire gender can constitute a social group under the INA.

Rreshpja does not explicitly state that she was or will be persecuted on account of her membership in a particular social group, but she suggests that the relevant group is young (or those who appear to be young), attractive Albanian women who are forced into prostitution. This demographic, however, does not constitute a social group under the INA for two reasons. First, almost all of the pertinent decisions have rejected generalized, sweeping classifications for purposes of asylum. *See, e.g., Raffington v. INS*, 340 F.3d 720, 723 (8th Cir. 2003) (ruling that mentally ill Jamaicans did not qualify as a particular social group for asylum purposes); *Gomez v. INS*, 947 F.2d 660, 663-64 (2d Cir. 1991) (holding that a Salvadoran woman who had been beaten and raped by Salvadoran guerillas during her youth was not for that reason a member of a particular social group for asylum purposes).

Rreshpja, however, cites *Mohammed v. Gonzales*, 400 F.3d 785 (9th Cir. 2005), as support for her argument that a social group may in fact be broadly defined. In *Mohammed*, the Ninth Circuit held that female genital mutilation constitutes persecution on account of membership in a particular social group and explained that "the agency could define the social group as that of Somalian females." *Id.* at 796-97. The court noted that "the practice of female genital mutilation

in Somalia is . . . deeply imbedded [*sic*] in the culture throughout the nation and performed on approximately 98 percent of all females." *Id.* at 797. We do not necessarily agree with the Ninth Circuit's determination that virtually all of the women in Somalia are entitled to asylum in the United States. Regardless, we find that *Mohammed* is distinguishable from the present case because Rreshpja did not introduce any evidence to show that the practice of forcing young women into prostitution in Albania is nearly as pervasive as the practice of female genital mutilation in Somalia.

Second, a social group may not be circularly defined by the fact that it suffers persecution. The individuals in the group must share a narrowing characteristic other than their risk of being persecuted. *Castellano-Chacon*, 341 F.3d at 548 ("[S]ociety's reaction to a 'group' may provide evidence in a specific case that a particular group exists, as long as the reaction by persecutors to members of a particular social group is not the touchstone defining the group."). If the group with which Rreshpja is associated is defined noncircularly—i.e., simply as young, attractive Albanian women—then virtually any young Albanian woman who possesses the subjective criterion of being "attractive" would be eligible for asylum in the United States.

Rreshpja also argues that, even in the absence of a well-founded fear of future persecution on account of membership in a particular social group, a "humanitarian grant" of asylum is appropriate in her case. To qualify for such a discretionary grant of asylum, an alien must either demonstrate "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "establish[] that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(A) & (B); *see also In re Chen*, 20 I. & N. Dec. 16, 21 (BIA 1989) (concluding that, although the respondent did not show a possibility of future persecution because the cultural revolution in China had ended, forcing him to return to China would be inhumane).

Rreshpja contends that requiring her to return to Albania in light of her fears of being abducted and forced into prostitution would be equally inhumane. The BIA's decision in *Chen*, however, was based upon the fact that the respondent had in fact suffered past persecution, even though the presumption of future persecution had been rebutted. *Chen*, 20 I. & N. Dec. at 20-21. Here, Rreshpja has not proven that she suffered past persecution. *See Mullai v. Ashcroft,* 385 F.3d 635, 638-39 (6th Cir. 2004) (holding that the applicant had not demonstrated past persecution and therefore was not eligible for a grant of asylum on humanitarian grounds).

An applicant may also establish eligibility for asylum based solely on a well-founded fear of future persecution, provided that she can demonstrate both a subjective fear of persecution and an objectively reasonable possibility of persecution if forced to return to the country in question. *Recinos de Leon v. Gonzales*, 400 F.3d 1185, 1190 (9th Cir. 2004). Although Rreshpja has established her subjective fear of future persecution, she has not demonstrated an objectively reasonable possibility that she will be persecuted if she is forced to return to Albania. The isolated and apparently random attempt to abduct Rreshpja in 2001 by an unknown assailant is simply not sufficient to establish persecution by the government of Albania. A humanitarian grant of asylum is therefore unwarranted.

Finally, Rreshpja claims that the IJ erred in finding that some aspects of her testimony lacked credibility. We need not determine whether this assertion is correct because, even assuming that all of Rreshpja's testimony was consistent with both her asylum application and the relevant country condition reports, she has not established either past persecution or a well-founded fear of future persecution "on account of . . . membership in a particular social group." 8 U.S.C. 1101(a)(42)(A); *Castellano-Chacon*, 341 F.3d at 548.

### 2.       *Withholding of removal*

To be eligible for the withholding of removal pursuant to the INA, an alien must establish that her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3)(A).  The petitioner must establish a "clear probability of persecution."  *INS v. Stevic*, 467 U.S. 407, 413 (1984).  This burden of proof is more stringent than that required to establish eligibility for asylum. *Cardoza-Fonseca*, 480 U.S. at 431-32.  Because Rreshpja has not established that she is eligible for asylum, she "cannot satisfy the more stringent standard for withholding of deportation." *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001).

### 3.       *Protection under the CAT*

To be eligible for protection under the CAT, an alien must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).

> Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001) (quoting 8 C.F.R. § 208.18(a)(1)).

The IJ found that Rreshpja was ineligible for relief under the CAT because she had failed to establish that government officials acquiesced in her attempted kidnapping or that they would continue to acquiesce in any future persecution.  "According to the regulations, 'the term "acquiescence" requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his legal responsibility to intervene to prevent such activity.'" *See Ali*, 237 F.3d at 597 (quoting 8 C.F.R. § 208.18(a)(7)).

The record indicates that the local police in Albania did not ignore Rreshpja's complaint.  Rather, they were unable to solve the crime because she could not provide them with adequate information.  The record also indicates that the Albanian government is currently taking steps to suppress human trafficking in Albania and to penalize local police officers who are directly or indirectly involved in these activities.  Although human trafficking continues to be a serious problem in Albania, Rreshpja did not present evidence that compels a finding that the Albanian government acquiesces in forcing women into prostitution.  She is therefore not eligible for protection under the CAT.

### C.       **Rreshpja's due process rights were not violated when the BIA affirmed the IJ's opinion without issuing its own opinion on the matter**

Rreshpja next claims that the BIA's use of the summary-affirmance-without-opinion procedure, known as "streamlining," violated her rights under the INA and/or the Due Process Clause of the Fifth Amendment.  Because she did not raise her claim for asylum on humanitarian grounds before the IJ, she contends that the BIA was obligated to issue an opinion addressing this claim.  Rreshpja also argues that the IJ's opinion contains errors of law and fact that should have been corrected by the BIA.

Pursuant to 8 C.F.R. § 1003.1(e)(4), a single BIA member is authorized to affirm an IJ's decision without stating the basis for the affirmance if the criteria set forth in the regulation are met. Such an affirmance indicates that the IJ decided the case correctly, that any errors committed by the IJ were immaterial or harmless, and either that the issue is squarely controlled by precedent and does not involve a novel factual issue or that the factual and legal issues raised on appeal are too insubstantial to warrant a three-member review. *Id.*

In *Denko v. INS*, 351 F.3d 717 (6th Cir. 2003), this court held that the BIA's procedures for issuing an affirmance without opinion comport with due process. The court explained that

> it is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion. Even if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision. Thus, [the petitioner] receives the full and fair review that she is entitled to receive. Moreover, in functional terms, if the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal. Thus, we are not forced to guess at the rationale of the BIA, but instead we evaluate the IJ's explanation as that of the Board; the Board cannot rely on an unarticulated basis for its determination.

*Id.* at 730 (citations and quotation marks omitted).

The government argues that we should decline to review the decision of the BIA to streamline Rreshpja's appeal because "agency action which has been committed to the absolute discretion of an agency is not reviewable." This court has not explicitly ruled to the contrary, but it has noted that "this argument for committing this decision to the agency's discretion is doubtful because there are judicially manageable standards available to a reviewing court." *Denko*, 351 F.3d at 731; *see also Hassan v. Gonzales*, 403 F.3d 429, 437 (6th Cir. 2005) ("[W]hether an alien may challenge the BIA's use of its streamlining procedure pursuant to the Administrative Procedure Act . . . remains an open question before this court."). We need not decide whether the decision of the BIA to streamline Rreshpja's case is reviewable, however, because the case before us does not present a novel factual or legal question. *Cf. Chen v. Ashcroft*, 378 F.3d 1081, 1086-87 (9th Cir. 2004) (holding that the BIA lacked the authority to streamline a petitioner's appeal because no BIA or federal court precedent squarely controlled the legal issue presented and because the issues raised on appeal were not insubstantial). A ruling on the BIA's streamlining procedure is therefore unnecessary.

**D.      The BIA did not err in denying Rreshpja's motion to reconsider**

Finally, Rreshpja contends that the BIA erred in denying her motion to reconsider. The motion, which she filed in June of 2004, was denied by the BIA two months later. In her motion, Rreshpja argued that the BIA improperly issued an affirmance without an opinion. She also claimed that the BIA has granted asylum to rape victims in the past.

We are precluded from considering Rreshpja's arguments regarding the decision of the BIA to deny her motion to reconsider because she did not designate the August 2004 decision in her petition for review. *See Momoh v. BIA*, 75 Fed. Appx. 969, 971 (5th Cir. 2003) (unpublished) (denying the petitioner's motion to review a decision of the BIA because the motion "does not designate the district court's judgment and cannot be interpreted fairly to evince an intent to appeal that judgment"); 8 U.S.C. 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."). The only appeal filed by Rreshpja with this court is from the BIA's May 24, 2003 summary affirmance of the IJ's decision. *See Stone v. INS*, 514 U.S.

386, 405 (1995) (distinguishing between a petition to review the BIA's underlying decision and a petition for review of the denial of reopening or reconsideration).

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Rreshpja's petition for review of the decision by the BIA.