NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0249n.06
Filed: April 1, 2009

No. 08-3392

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VJOLETE KALAJ, | ) | |
| | ) | ON PETITION FOR REVIEW |
| *Petitioner*, | ) | FROM A DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| **ERIC H. HOLDER, JR.,** Attorney General of the | ) | **O P I N I O N** |
| United States | ) | |
| | ) | |
| *Respondent*. | ) | |

BEFORE:  COLE and CLAY, Circuit Judges; CLELAND, District Judge.[*]

**COLE, Circuit Judge.**  Petitioner Vjolete Kalaj seeks review of the Board of Immigration

Appeals's ("BIA") final order of removal to Albania.  The BIA dismissed Kalaj's appeal of the

immigration judge's ("IJ") decision denying her application for asylum, withholding of removal, and

protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or

Degrading Treatment or Punishment ("CAT").  Specifically, the BIA concluded the Kalaj failed to

establish her membership in a particular social group and failed to show that the Albanian

government was unwilling or unable to protect her.  For the reasons set forth below, we **DENY**

Kalaj's petition for review.

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

## I.  BACKGROUND

### A.  Factual Background

Kalaj is a native and citizen of Albania who entered the United States around February 5, 2001, on a non-immigrant visa.  She alleges that she immigrated here to escape past persecution, which she describes as attempted kidnappings for the purpose of forcing her into prostitution.  She also fears that she will face similar future persecution if forced to return to Albania.  Her fear stems from three separate incidents that occurred in Albania in 2001.  During the first incident, Kalaj was returning from a store when she was approached by three men.  The men asked her if she had an interest in traveling to Italy to work as a waitress.  Kalaj declined, understanding the encounter as a attempt to recruit her for prostitution.  Three days later, she encountered one of the same men, who asked her if she had changed her mind about going to Italy.  When Kalaj stated that she had not, the man acted in an aggressive manner—in tone and facial expression.  Two weeks after the second incident, when Kalaj was again returning home from a store, a white Mercedes Benz stopped in front of her.  Two men emerged from the car, while the driver remained in the vehicle.  Fearing for her safety, Kalaj dropped her groceries and ran.  The men pursued and caught her and began dragging her back to the vehicle.  A good Samaritan, Gjovalin Boka, intervened by yelling at the men to release her.  Faced with this confrontation, the men fled the scene, shouting that they knew where Kalaj lived and that they would return.

In her testimony before the IJ, Kalaj alleges that she did not report the incidents to authorities because she feared retribution against her family, was aware that in other similar instances the police had been unresponsive, and feared visiting the local village officer's home because doing so might

raise suspicions of impropriety.

Instead, Kalaj fled to her uncle's home in Elbasan, Albania, approximately five to six hours away, where she hid for five days. Her uncle arranged for Kalaj to purchase to false passport. She used the passport to travel to Italy, where she stayed with an aunt for two weeks. There, her aunt obtained another false passport for Kalaj, and Kalaj traveled with a smuggler to the United States. The smuggler allegedly took her passport from her when she arrived here.

**B.      Procedural Background**

Kalaj filed an application for asylum with the Immigration and Naturalization Service ("INS"), now part of the United States Department of Homeland Security. The INS conducted an interview and referred the matter to an IJ. On January 3, 2002, the INS issued a Notice to Appear ("NTA"), thereby initiating removal proceedings against Kalaj. The NTA alleged that she was subject to removal under section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), as an alien not in possession of valid entry documents. Through counsel, Kalaj conceded removability but filed a supplemental application for asylum and sought withholding of removal and protection under the CAT.

On July 30, 2003, an IJ conducted Kalaj's first hearing, denying all her applications on the ground that she was not credible. Kalaj appealed, and the BIA remanded for a new decision or for further hearings as determined necessary by the IJ because the IJ's previous decision did not set forth specific findings of fact to support her adverse credibility finding and the denial of Kalaj's claims on the merits.

On remand, a different IJ conducted a de novo hearing on Kalaj's claims. The IJ found Kalaj

credible but denied her applications for asylum, withholding of removal, and protection under the

CAT. Kalaj appealed to the BIA. On March 13, 2008, the BIA dismissed the appeal, finding that

Kalaj failed to establish membership in a particular social group and failed to show that the Albanian

government was unwilling or unable to protect her. This petition for review followed.

## II.  LAW AND ANALYSIS

### A.      Standard of review

When, as here, the BIA issues a separate opinion, rather than summarily affirming the IJ's

decision, we review the BIA's decision as the final agency determination. *See Khalili v. Holder*, No.

08-3296, 2009 U.S. App. LEXIS 4023, at \*15 (6th Cir. Feb. 27, 2009) (citing *Morgan v. Keisler*, 507

F.3d 1053, 1057 (6th Cir. 2007)). "Questions of law are reviewed de novo, but substantial deference

is given to the BIA's interpretation of the INA and accompanying regulations." *Id*. (citations

omitted). The BIA's factual findings are reviewed under the substantial-evidence standard. *See*

*Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007).

### B.      Asylum

Under the INA, an applicant for asylum must demonstrate that she is a "refugee." 8 U.S.C.

§ 1158(b). An individual qualifies as a refugee when she is unable or unwilling to return to her

home country due to "persecution or a well-founded fear of persecution on account of race, religion,

nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A).

Kalaj argues that she is entitled to asylum because she faced past persecution and possesses

a well-founded fear of future persecution. She claims membership in a social group defined as

young, impoverished, single, uneducated women who risk kidnapping and forced prostitution. Relying on this Court's decision in *Rreshpja v. Gonzales*, 420 F.3d 551 (6th Cir. 2005), the BIA rejected this argument, concluding that Kalaj's claimed membership group did not constitute a "particular social group" as that term is contemplated by the INA. *Id*. at 555-56; 8 U.S.C. § 1101(a)(42)(A). Because this issue was resolved squarely by our *Rreshpja* opinion, we must agree.

The facts of that case and the case at hand are remarkably similar. There, petitioner Rreshpja argued that she faced persecution as an attractive, young woman who feared being kidnapped and forced into prostitution if removed to Albania. *Rreshpja*, 420 F.3d at 554. This Court rejected Rreshpja's claim that her demographic constituted a social group under the INA for two reasons. First, the Court reasoned that "almost all of the pertinent decisions have rejected generalized, sweeping [social group] classifications for purposes of asylum," and thus Rreshpja's claimed membership in the "young (or those who appear to be young), attractive Albanian women who are forced [or may be forced] into prostitution" group did not constitute a "particular social group." *Id*. at 555 (citations omitted). Arguably, decisions from our sister circuits raise questions about the breadth of what constitutes a "particular social group," *see Mohammed v. Gonzales*, 400 F.3d 785, 798 (9th Cir. 2005) (determining that Somalian females potentially subject to female genital mutilation qualify as a social group); *Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005) (concluding that gender or membership in a tribe is sufficient to constitute a social group), but this Court may not reconsider a prior panel's published opinion and Kalaj's claimed "particular social group" is not distinguishable. *See Barr v. Lafon*, 538 F.3d 554, 571 (6th Cir. 2008) (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); 6th Cir. R. 206(C)).

Second, the *Rreshpja* Court reasoned that "a social group may not be circularly defined by the fact that it suffers persecution. The individuals in the group must share a narrowing characteristic other than their risk of being persecuted." *Rreshpja*, 420 F.3d at 556 (citing *Castellano-Chacon v. INS*, 341 F.3d 533, 548 (6th Cir. 2003)). Thus, a petitioner must set out some common, immutable social-group characteristic beyond the risks of persecution associated with one's home country. *See In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) ("Whatever the common characteristic that defines the group it must be one that the members of the group cannot change, or should not be required to change because it is fundamental to their individual identities or consciences."). Here, Kalaj presents no such immutable group trait other than a generalized risk to women associated with the reportedly high levels of human trafficking in Albania. As such, Kalaj has not established membership in a particular social group and is ineligible for asylum under the INA. Therefore, we need not consider the BIA's conclusion that Kalaj failed to show that the Albanian government was unwilling or unable to protect her.

## C.     Withholding of removal

To prevail on a petition for withholding of removal an alien must show that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden of proof to establish eligibility for withholding of removal is more stringent than that required for asylum. *Rreshpja*, 420 F.3d at 557 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987)). As Kalaj has not established that she is eligible for asylum, she cannot satisfy the more stringent requirements for withholding of removal. *See Koliada v. INS*, 259 F.3d 482, 489 (6th Cir.

2001).

## D.     Protection under the CAT

The BIA determined that Kalaj failed to contest the IJ's denial of protection under the CAT. "Before raising an immigration issue in federal court, a petitioner must normally present all reviewable issues to the BIA." *Khalili*, 2009 U.S. App. LEXIS at *7. Failure to exhaust an issue to the BIA generally results in waiver of that issue. *Id.* (citing *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005); *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)). Moreover, Kalaj did not raise the issue in her Petition for Review to this Court nor did she provide any substantive briefing. Therefore, we conclude Kalaj waived her claims under the CAT.

## III.  CONCLUSION

For the reasons set forth above, we **DENY** Kalaj's petition for review.