**NOT FOR FULL-TEXT PUBLICATION**
File Name: 10a0271n.06

**No. 09-3707**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **JULIO FRANCISCO CASTRO-PAZ;** <br> **ALBA BEATRIZ VILLACORTA-HERNANDEZ,** | |
| **Petitioners,** | |
| **v.** | **ON PETITION FOR REVIEW** <br> **OF AN ORDER OF THE BOARD** |
| **ERIC H. HOLDER, JR., Attorney General;** <br> **DEPARTMENT OF HOMELAND SECURITY,** | **OF IMMIGRATION APPEALS** |
| **Respondents.** | |

**FILED**
**May 03, 2010**
LEONARD GREEN, Clerk

_____/

**BEFORE:  SUHRHEINRICH, McKEAGUE and GRIFFIN, Circuit Judges.**

 **PER CURIAM.**  Petitioner Julio Francisco Castro-Paz ("Castro"), and his niece, Petitioner Alba Beatriz Villacorta-Hernandez ("Villacorta") (together "Petitioners"), citizens of El Salvador, seek review of the Board of Immigration Appeals's ("Board") final order of removal to El Salvador. The Board dismissed their appeal from an order of an immigration judge ("IJ") (together "agency") denying their applications for asylum and withholding of removal.  The Board exercised jurisdiction over Petitioners' appeal pursuant to 8 C.F.R. § 1003.1(b)(3).  This Court has jurisdiction under Section 242(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(1), _as amended by_ the REAL ID Act of 2005, Pub. L. No. 109-12, Div. B, § 106, 119 Stat. 231 ("REAL ID Act").  _See_ 8 U.S.C. § 1252(b)(2).  For the following reasons, we shall deny the petition for review.

**I.**

On April 4, 2006, Petitioners entered the United States, without being admitted or paroled, at Hidalgo, Texas. On April 5, 2006, the Department of Homeland Security (DHS) served each Petitioner with a notice to appear, charging them with removability under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i). On December 14, 2006, Petitioner appeared with counsel before an IJ. At that hearing they admitted the factual allegations contained in their respective notices to appear and conceded their removability as charged. They indicated their intention to apply for asylum and withholding of removal. Thereafter, each Petitioner filed a defensive application for asylum and withholding or removal.

On August 23, 2007, the IJ held a hearing. Castro testified that in El Salvador he was employed as a cashier in route for a company that transported money among banks. As part of his job, he learned sensitive information concerning how money was transported, including the routes taken by trucks, the number of guards on each truck, the amount of money transported, and how to retrieve the money from the trucks and the banks. In September 2005, and again in December 2005, he was approached by members of the MS-13 gang, asking for information related to his job. In the September 2005 incident, Castro did not give them the information, and the gang members left after he gave them some money. In the December 2005 incident, Castro escaped when a friend drove up and Castro got into his vehicle. Castro said the men threatened to kill him if he did not give them the information he wanted. Fearing for his life, Castro fled El Salvador shortly after these encounters.

Villacorta, a high school student and Castro's niece, testified that in March 2006, she was stopped by gang members as she was leaving school. They pulled a knife on her and took her ring.

She also stated that gang members threatened to kill her and her family if she told the police. Villacorta said she knew they were members of the MS-13 gang because of their tattoos. Also in March 2006, she was robbed on a bus on her way to school by gang members. After one of her neighbors was murdered by gang members allegedly for reporting the gang to the police, Villacorta decided to leave the country.

The IJ issued an oral decision the same day denying their applications for asylum and withholding of removal. The IJ found both Petitioners credible and decent, hardworking people. However, the judge held that Petitioners failed to establish that they were persecuted or had a well-founded fear of future persecution on account of a statutorily protected ground under the INA. Regarding Castro, the IJ found that a group consisting of "individuals who are targeted by gang members because they possess sensitive information obtained through their employment" did not qualify as a particular social group pursuant to the INA. The IJ found that Castro's knowledge of the way money was transported in El Salvador was not an "immutable characteristic" and that it became more outdated as time passes. Even if the dated nature of the information was not a factor, the IJ held that the group identified by Castro also did not possess the requisite "social visibility" to qualify as a particular social group pursuant to the INA. Thus, the IJ found no nexus between the prior threats Castro received from the gang members or any future threats and any statutorily protected ground.

Regarding Villacorta, the IJ found that a group of "young, unprotected women who have received gang threats" did not qualify as a particular social group pursuant to the INA. The judge found that the proposed group did not satisfy the standard of "particularity" and was also overbroad. Thus, the judge found no nexus between the robberies and any statutorily protected ground. Thus,

3

because they failed to establish the requisite nexus, Petitioners were not eligible for asylum and withholding of removal.

They timely appealed to the Board. On May 26, 2009, the Board dismissed Petitioners' appeal, denying their applications for asylum and withholding of removal. Regarding Castro, the Board agreed that finding that a group consisting of "individuals who are targeted by gang members because they possess sensitive information obtained through their employment" did not qualify as a particular social group pursuant to the INA. The Board also agreed that Castro's knowledge of the way money is transported was not an "immutable characteristic," and in fact, becomes more outdated as time passes. The Board also found that even if the dated nature of Castro's information was not a factor, the group identified by Castro did not possess the requisite "social visibility" to qualify as a particular social group.

As to Villacorta, the Board agreed with the IJ's finding that a group consisting of "young unprotected women who have received gang threats" did not qualify as a particular social group pursuant to the INA because it was too broad and lacked "social visibility." Thus, the Board likewise concluded that because Petitioner failed to establish the requisite nexus, she had not met her burden under the INA of establishing past persecution or a well-founded fear of future persecution in El Salvador. Consequently, the Board denied Petitioners' applications for asylum and withholding of removal.

This petition for review follows.

## II.

Because the Board issued a separate opinion, rather than summarily affirming the IJ's decision, we review the Board's decision as the final agency determination. *See Khalili v. Holder*,

4

557 F.3d 429, 435 (6th Cir.2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir.2007)). However, to the extent the Board adopted the IJ's reasoning, we also review the IJ's decision. *Id.* "Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Id.* (citations omitted). The Board's factual findings are reviewed under the substantial-evidence standard. *Id.*

On appeal Petitioners claim that the Board and IJ erred in concluding that they failed to meet their burden of establishing that they are "refugees" within the meaning of 8 U.S.C. § 1101(a)(42)(A). Specifically, Castro contends that he has established that he is a member of a particular social group consisting of individuals who are targeted by gangs because of sensitive information they have obtained as a result of their employment in the banking industry. Villacorta claims that she has met her burden because she is a member of particular social group made up of young unprotected female students who have been targeted by gangs.

Under the INA, an applicant for asylum and withholding of removal has the burden of establishing his eligibility for relief. 8 U.S.C. § 1158(b); 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208; 8 C.F.R. § 1208.16(b). As a threshold matter, the applicant must show that he is a "refugee" within the meaning of section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42). A refugee is a person who is unable or unwilling to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also* 8 U.S.C. § 1158(b)(1)(B) (stating that "[t]o establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"); 8 U.S.C. § 1231(b)(3)(A)

5

(stating that to prevail on a petition for withholding of removal an alien must show that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"). *See generally Pilica v. Ashcroft,* 388 F.3d 941, 950 (6th Cir. 2004) (holding that alien has burden of proving refugee status and whether his case merits a favorable exercise of discretion by the Attorney General).

The phrase "membership in a particular social group" is not statutorily defined. This Circuit has adopted the Board's definition of a "social group" as "'a group of persons all of whom share a common, immutable characteristic.'" *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir.2005) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)), *overruled on other grounds by In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)); *Castellano-Chacon v. INS*, 341 F.3d 533, 546, 549 (6th Cir.2003), *modified on other grounds Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006). "Whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id*. (quoting *Acosta*, 19 I. & N. Dec. at 233).

The Board has further refined the meaning of a "particular social group." *Matter of C-A-*, 23 I & N. Dec. 951, 956 74 (BIA 2006), *aff'd Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190 (6th Cir. 2006); *Matter of A-M-E- & J-G-U*, 24 I. & N. Dec. 69, 74 (BIA 2007), *aff'd Ucelo-Gomez v. Mukaskey*, 509 F.3d 70 (2d Cir. 2007) (per curiam). In addition to an immutable or fundamental characteristic, a particular social group must have "particularity" and "social visibility." *Matter of C-A*, 23 I & N. Dec. at 951, 956, 960; *Matter of A-M-E-*, 24 I. & N. Dec. at 74-75. *See also Matter of S-E-G*, 24 I. & N. Dec. 579, 582-586 (BIA 2008). The Board's construction is reasonable and entitled to deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron, U.S.A.,*

6

*Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

Petitioners have not established that they are "refugees" because of their membership in a "particular social group." Concerning Castro, the agency reasonably concluded that a group consisting of "individuals who are targeted by gang members because they possess sensitive information obtained through their employment" did not constitute a particular social group under the INA. First, such a group lacks an "immutable characteristic" because Castor could change jobs and "the 'concept of a refugee simply does not guarantee an individual a right to work in the job of his choice.'" *Castellano-Chacon* , 341 F.3d at 547 (quoting at *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) (holding Salvadoran taxi cooperative did not constitute a particular social group, even though the members were being persecuted for refusing to participate in work stoppages, because the drivers could escape persecution by changing jobs)). Castro's knowledge of the way money is transported in El Salvador is also not an "immutable characteristic" because it is subject to change and becomes stale as time passes. *See Acosta*, 19 I & N. Dec. at 233 (stating that an "immutable characteristic" "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences"); *cf. Mwembie v. Gonzales*, 443 F.3d 405, 414-15 (5th Cir. 2006) (holding that government employment is not an immutable characteristic). The group identified by Castro also lacks the requisite "social visibility." Castro offered no evidence that former bank employees are identifiable in society. *See*, *e.g., Davila-Mejia v. Mukaskey*, 531 F.3d 624, 629 (8th Cir. 2008) (holding that status as "competing family business owners" did not give aliens "sufficient social visibility to be perceived as a group by society"); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (per curiam) (holding that status as affluent Guatemalans allegedly targeted because of their

7

wealth were not a particular social group).  Finally, Castro's particular social group is defined by its risk of being persecuted.  However, we have held that "a social group may not be circularly defined by the fact that it suffers persecution. The individuals in the group must share a narrowing characteristic other than their risk of being persecuted."  *Rreshpja*, 420 F.3d at 556; *see also Castellano-Chacon*, 341 F.3d at 548 (same).  In short, the agency reasonably concluded that the social group identified by Castro did not constitute a particular social group within the meaning of the INA and therefore it properly denied his applications for asylum and withholding of removal.

The agency also reasonably concluded that being a member of a particular social group consisting of "young, unprotected women who have received gang threats" did not qualify as a "particular social group" under the INA.  *See Rreshpja*, 420 F.3d at 555-56 (holding that a group of young, attractive Albanian women who are forced into prostitution is too broad to qualify as a particular social group); *Matter of S-E-G*, 24 I & N. at 588 (holding that a group "of male children who lack stable families and meaningful adult protection who are from middle and low income classes, who live in territories controlled by the MS-13 gang, and who refuse recruitment" is "amorphous" because the meaning of the terms may vary).  The agency also found that Villacorta's proposed group lacked "social visibility."  *Cf. Rreshpja*, 420 F.3d at 555 (holding that young attractive Albanian women who are forced into prostitution lacked the social visibility necessary to identify such persons as a particular social group); *Kalaj v. Holder*, 319 F. App'x 374 (6th Cir. 2009) (holding that a social group defined as young, impoverished, single, uneducated women who risk kidnapping and forced prostitution were not a particular social group).  Like the proposed groups in *Rreshpja*, and *Kalaj*, Villacorta's proposed social group fails because it consists of a generalized, sweeping classification.  *Reshjpa*, 420 F.3d at 555; *Kalaj*, 319 F. App'x at 376.  Moreover, like the

8

group in *Rreshpja*, the group posited by Villacorta is circularly defined by the fact that it suffers persecution and does not share any narrowing characteristic other than the risk of being persecuted. *See Rreshpja*, 420 F.3d at 556. The agency reasonably concluded that the social group identified by Castro did not constitute a particular social group within the meaning of the INA and therefore it properly denied his applications for asylum and withholding of removal.

Petitioners also argue on appeal that the El Salvadorian government is unable or unwilling to control their alleged persecutors, the MS-13 group. We lack jurisdiction over this issue because they failed to present this issue to the Board. *See* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (holding that this Court lacks jurisdiction to review any issues that have not been raised and exhausted below).

## III.

The agency's finding that Petitioners failed to demonstrate their memberships in a particular social group was reasonable. We therefore AFFIRM the ruling of the Board of Immigration Appeals and DENY Petitioners' petition for review.