NOT RECOMMENDED FOR PUBLICATION
File Name:  18a0409n.06

No. 17-3995

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DINA ENEIRA BETANCOURT-APLICANO and )
DOMINIC MONSERRATH LOPEZ- )
BETANCOURT, )
  )
     Petitioners, )
  )
v. )
  )
JEFFERSON B. SESSIONS III, United States )
Attorney General, )
  )
     Respondent. )

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

BEFORE:    BOGGS, CLAY, and ROGERS, Circuit Judges.

BOGGS, Circuit Judge.   Two citizens of Honduras, Dina Betancourt-Aplicano and her minor daughter Dominic Lopez-Betancourt, petition for review of the BIA's denial of their applications for asylum and withholding of removal.  For the reasons set forth below, we deny the petition for review.

# I

## A.  Factual Background

Dina Betancourt-Aplicano is a citizen of Honduras.  Beginning in January 2012, she earned a living by selling home-cooked meals door-to-door two or three times per week to her neighbors and to spectators at local soccer games.  She typically traveled by bicycle or foot in the late

afternoon and returned home between 6:00 p.m. and 8:00 p.m. When she began selling food, Betancourt-Aplicano was pregnant with her daughter, Dominic Lopez-Betancourt.

In approximately February 2012, two men approached Betancourt-Aplicano on her way home and demanded that she give them her money. She initially refused, but one of the men brandished a knife and forcibly took money from her. During the next year-and-a-half, Betancourt-Aplicano was robbed at knifepoint or gunpoint between eight and twelve times per month, by a rotating set of two men from a group comprised of approximately ten men.[1] Betancourt-Aplicano was never physically injured, but the robbers would either forcibly take her money or threaten her if she did not voluntarily turn over her money. Generally, the robbers would take only a portion of her money.

In May 2012, Betancourt-Aplicano gave birth to her daughter and the robbers occasionally told Betancourt-Aplicano that they would harm her daughter if Betancourt-Aplicano refused to surrender the money. As a result, Betancourt-Aplicano enlisted the help of a relative and a friend to watch her daughter while Betancourt-Aplicano was out selling food. There is no evidence on the record to suggest that her daughter was ever physically harmed by the robbers. During the hearing before the immigration judge, Betancourt-Aplicano presented testimony from two Honduran witnesses, one male and one female, who explained that they were also robbed periodically.

Betancourt-Aplicano testified that she could have recognized and identified the robbers to police. However, she chose not to contact the police because she was afraid and believed that the police would be ineffective.

---

[1] During the proceeding in front of the immigration judge, it appears that Betancourt-Aplicano's attorney misstated the range as "so, that's anywhere between eight and twenty-four times a month. Is that correct?" However, Betancourt-Aplicano had testified that she sold food two or three times per week and was robbed almost every time, totaling eight to twelve robberies per month.

Before she began her food-selling business, Betancourt-Aplicano had been a domestic employee. She did not receive any sort of threats, nor was she robbed, while employed as a domestic worker. In addition to her income from selling food, Betancourt-Aplicano also periodically received money from her daughter's father.

Betancourt-Aplicano and her daughter arrived in the United States on May 27, 2014 without a valid visa.

### A. Procedural Background

On August 13, 2014, the Department of Homeland Security began removal proceedings against Betancourt-Aplicano and her daughter by filing Notices to Appear. The government charged them with removability under the Immigration and Nationalization Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being aliens present in the United States without having been admitted or paroled. Betancourt-Aplicano conceded her removability as charged, but filed applications for asylum, withholding of removal, and Convention Against Torture (CAT) protection for herself and her daughter.

Betancourt-Aplicano's proffered social group was "single unprotected female business owners out in the community selling food." The daughter's proffered social group was being the child of someone who is being targeted for persecution. On October 19, 2016, the immigration judge denied the applications for asylum, withholding of removal, and CAT protection. Betancourt-Aplicano appealed the immigration judge's decision to the Board of Immigration Appeals (BIA). The BIA affirmed the IJ's decision and issued a separate opinion. The BIA held that Betancourt-Aplicano did not present a cognizable social group that she belonged to and failed to establish a nexus between the harm that she experienced and her proffered social group. The BIA assumed, without deciding, that the daughter may fall within a cognizable family-based social

group but held that she was targeted "as a means of extorting money" from the mother rather than intrinsically because of her family ties. The BIA held that Betancourt-Aplicano did not carry her burden to establish that the mistreatment constituted "persecution" because the robbers were not government actors and she did not prove that the government would have been wholly unwilling or unable to assist in stopping them. The BIA also held that Betancourt-Aplicano failed to meet the requirements to establish eligibility for Convention Against Torture protection. Betancourt-Aplicano filed a petition for review, challenging only the BIA's determination as to the asylum and withholding-of-removal claims.

## II

Where the BIA reviews the immigration judge's decision and issues its own opinion, this court reviews the BIA's order as the final agency determination. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015). However, if the BIA adopted the immigration judge's reasoning on a particular issue, we will also review the immigration judge's decision. *Id.* at 692.

This court reviews questions of law de novo and reviews factual determinations under the highly deferential substantial-evidence standard. Thus, the BIA's factual determinations are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

## III

### A. Asylum Claims

The decision whether to grant asylum is discretionary. *See* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). However, in order to be eligible for asylum, the applicant must establish that she is a "refugee." *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is a person "who is unable or unwilling to return to [her country] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social

group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

Not all social groups are cognizable for the purposes of the INA. The proffered social group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014); *see Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). In order to satisfy the particularity requirement, the group must be discrete and have definable boundaries. *Zaldana Menijar*, 812 F.3d at 498. In order to satisfy the social distinction requirement, the group must be perceived as a group by society, regardless of whether society can identify the members of the group by sight. *Ibid.* While the question of whether a proffered social group is cognizable is ultimately a question of law, *Sanchez-Robles*, 808 F.3d at 691, the factual elements underlying that determination—whether the group is based on an immutable characteristic, whether the group is defined with particularity, and whether the group is socially distinct—are factual questions reviewed for substantial evidence. *See Zaldana Menijar*, 812 F.3d at 498–99.

In addition to proffering a cognizable social group, the applicant must satisfy the nexus requirement. Applicants must show that membership in the social group or protected class "was or will be at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i); *see Bonilla-Morales v. Holder,* 607 F.3d 1132, 1136 (6th Cir. 2010). The asylum applicant bears the burden to establish that she meets the definition of a refugee. INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).

### i. Betancourt-Aplicano's Asylum Claim

Betancourt-Aplicano's proffered social group of "single unprotected female business owners out in the community selling food" is not cognizable because it is neither immutable nor socially distinct. Betancourt-Aplicano's status as a food-selling business owner is not immutable.

After all, Betancourt-Aplicano previously had a different occupation, working as a domestic employee, and she did not testify that her current occupation was somehow fundamental to her identity. *See Castro-Paz v. Holder*, 375 F. App'x 586, 590 (6th Cir. 2010) (holding that the proffered social group "lack[ed] an immutable characteristic because [he] could change jobs and the concept of a refugee simply does not guarantee an individual a right to work in the job of his choice" (internal quotation marks omitted)). In her brief, Betancourt-Aplicano argues that it would be "virtually impossible" for her to change occupations because of her limited education and the low income she is likely to earn as a domestic employee. However, the evidence submitted by Betancourt-Aplicano does not compel the conclusion that it is virtually impossible for her to find alternative work.

Second, Betancourt-Aplicano did not provide any evidence that the category of "single unprotected female business owners out in the community selling food" is recognized in Honduras as somehow "set apart, or distinct, from other persons within the society in some significant way." *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 238. Instead, substantial evidence supports the conclusion that opportunistic robbers target anyone with wealth and that the robbers do not treat this proffered group as being distinct. Betancourt-Aplicano conceded as much when she testified that she believed that the robbers broadly target people who "work[]" or "people [the robbers] have felt are doing well." Betancourt-Aplicano argues that it is a "fair inference" from the testimony that these gangs target women more frequently in order to bolster the gang members' feeling of "machismo." However, that does not compel the conclusion that the category of "single unprotected female business owners out in the community selling food" is socially distinct.

Substantial evidence supports the BIA's conclusions that Betancourt-Aplicano's proffered social group was neither immutable nor socially distinct. As in similar Sixth Circuit cases,

Betancourt-Aplicano's proffered social group is not cognizable under the INA. An applicant's perceived wealth or access to money does not constitute membership in a cognizable social group. *See Sanchez-Robles*, 808 F.3d at 692 (rejecting a claimed social group of "persons who are perceived to have money or access to money due to having spent a significant amount of time in and having familial ties to the United States"). And more specifically, this court has held that a social group defined as "upwardly mobile women trying to build a better life through business" is not cognizable. *Mendez v. Sessions* No. 17-3148, 2017 U.S. App. LEXIS 22256, at *1 (6th Cir. Nov. 6, 2017).

Betancourt-Aplicano attempts to distinguish these cases by arguing that her claimed social group is more narrowly drawn than the above examples and by emphasizing that the IJ found her testimony to be credible. However, while "upwardly mobile women trying to build a better life through business" (which failed in *Mendez*) may technically be broader than Betancourt-Aplicano's "single unprotected female business owners out in the community selling food," this appears to be a distinction without a difference. That Betancourt-Aplicano's proffered social group is more narrowly defined than groups that this court has previously rejected does not mean that this group is cognizable. In neither case did the applicant carry the burden of establishing that the proffered group was socially distinct. And that the IJ concluded that Betancourt-Aplicano was sincere about the mistreatment that she endured does not relate to the question of her membership in a cognizable social group.

Because Betancourt-Aplicano has failed to proffer a cognizable social group, she failed to meet her burden to establish eligibility for asylum.

**ii. The Asylum Claim of Betancourt-Aplicano's Daughter**

The proffered social group for Betancourt-Aplicano's daughter's application was the daughter or relative of someone who is being targeted for persecution. The BIA did not analyze whether this group would satisfy the immutability requirement (which of course it would), the particularity requirement, and the social distinctiveness requirement to be a cognizable social group. Instead, the BIA assumed without deciding that Betancourt-Aplicano's minor daughter could conceivably fall within a family-based social group as a member of the Betancourt-Aplicano family. **[[AR at 5]]** *See Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009). But even so, the BIA concluded that the daughter failed to satisfy the nexus requirement.

Substantial evidence supports the BIA's conclusion that the daughter was inferentially threatened by the robbers merely as a "means of extorting money" from Betancourt-Aplicano. The daughter's name was only ever mentioned in conjunction with the robbers' demands for money from Betancourt-Aplicano. And where threats made against a family member are simply "a means to achieve the [robbers'] objective to increase [their] profits," there is no nexus. *Matter Of L-E-A-*, 27 I. & N. Dec. 40, 46–47 (B.I.A. 2017). Thus, even if Betancourt-Aplicano's daughter offered a cognizable family-based social group, she failed to satisfy the nexus requirement to establish eligibility for asylum.

The lack of a cognizable social group in Betancourt-Aplicano's application and the failure to demonstrate a nexus in the minor daughter's application are dispositive of their asylum applications. As a result, we decline to analyze whether the mistreatment committed by private actors, without Betancourt-Aplicano ever seeking police or government assistance, qualifies as "persecution," in light of the requirement that persecution be perpetrated by the government or by

a group that the government is unable or unwilling to control. *See Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009).

## B. Withholding of Removal Claims

A withholding-of-removal claim is analyzed similarly to an asylum claim but requires the applicant to meet a more stringent standard. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009). The applicant bears the burden of demonstrating that it is *more likely than not* that her "life or freedom would be threatened" because of her race, religion, nationality, membership in a particular social group, or political opinion, if she returned to her home country. *Ibid.*; see INA § 241(b)(3)(A), 8 U.S.C. §1231(b)(3)(A)). We have interpreted the "life or freedom would be threatened" language to require that the applicant demonstrate that he or she will be persecuted. *See Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006).

Because Betancourt-Aplicano's claimed social group is not cognizable, her withholding-of-removal claim necessarily fails. Similarly, for the reasons described above, the daughter has not established that it is more likely than not that she would be persecuted because of her proffered social group.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.