**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0937n.06
Filed: November 29, 2005

**No. 04-3900**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **MIRASH VOLAJ, et. al.,** ) | |
| ) | |
| **Petitioners-Appellants,** ) | |
| ) | **ON APPEAL FROM THE** |
| **v.** ) | **BOARD OF IMMIGRATION** |
| ) | **APPEALS** |
| **ALBERTO R. GONZALES,** ) | |
| ) | |
| **Respondent-Appellant.** ) | |
| ) | |

**BEFORE: KEITH, SUHRHEINRICH, and CLAY**

**DAMON J. KEITH, Circuit Judge**. Mirash Volaj ("Mr. Volaj"), his wife, Pranvera, and

their son Ardit (collectively "the Volajs" or "petitioners") petition for review of the denial of their

claim for asylum. For the reasons set forth below, we **DENY** the petition for review.

**I.      BACKGROUND AND STATEMENT OF CASE**

Mr. Volaj was born in Broje, Albania on June 10, 1961. (Joint Appendix ("J.A.") at 59).

Mr. Volaj is an Albanian citizen. On November 14, 2000, Mr. Volaj and his family entered the

United States in Orlando, Florida on false documents from Slovenia. (J.A. at 68-73). At the airport,

the Immigration and Naturalization Service ("INS")[1] conducted credible fear interviews with Mr.

and Mrs. Volaj. Mrs. Volaj testified that she came to the United States for a better life and freedom.

She did not express any fear about the Albanian government or police. She simply stated that she

---

[1] Pursuant to the implementing regulations of the Homeland Security Act of 2002, the functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security. 68 F.R. § 9824 (Feb. 28, 2003).

wanted to be in the United States because she had a poor life in Albania. While interviewing Mr.

Volaj, he attested that he left Albania because of a land dispute with his neighbor.

On June 28, 2002, Mr. Volaj filed an application for asylum. (J.A at 86-99). Mr. Volaj's

story in his application for asylum differed from the story he and his wife gave to the immigration

officials at the airport. In his asylum application, he stated that he was seeking asylum based on his

membership in a particular social group (J.A. at 90), and he alleged that he was afraid of being

beaten or murdered by the Albanian government if he returned and attempted to retrieve his land

(J.A.at 91).

On April 18, 2003, an immigration judge in Detroit, Michigan held a hearing on Volaj's

petition for asylum.[2] The immigration judge consolidated Volajs' asylum petitions into one case.

(J.A. at 47). During the hearing Mr. Volaj testified that he came from a large, wealthy family that

owned half of the land in his village before the Communist Party took over. He testified further that

when the communist party took over, it confiscated his family's land and converted it into a

commune. At the end of the communist regime, Mr. Volaj's family members recouped their land.

Mr. Volaj, however, did not obtain any of his land. In attempting to reacquire his land, Mr. Volaj

alleges that the Albanian police beat and harassed him. *Id.*

Mr. Volaj recounted three incidents where the police beat and harassed him. On September

14, 1998, when he attempted to retrieve his land the police allegedly beat him with rubber sticks on

the back of his head and fingers. (J.A. at 62). He was hospitalized from the beating. (J.A. at 62-64).

Mr. Volaj submitted medical records to support his injury from the police beating. On June 20, 1999

---

[2]On July 11, 2001, venue was changed from Orlando, Florida to Detroit, Michigan.

and September 18, 2000, Mr. Volaj also made attempts to have his land returned. On both occasions the police beat him. (J.A. at 66-67). In addition to the beatings, he was threatened by civilians working as secret police. (J.A. at 68). Over the course of three years, Mr. Volaj apparently made seven attempts to get his land back.

In an attempt to corroborate his testimony, Mr. Volaj proffered three exhibits. The first exhibits were affidavits and certificates verifying the Volajs' membership in the Society of Ex-Politically Persecuted Persons. The second exhibit explained the medical treatment he received after the September 14, 1998 incident. The third exhibit was an affidavit attesting that someone has been occupying his land for ten years and has a large amount of weapons stored on the property. (J.A. at 27-28).

After hearing the evidence, the immigration judge found that the Volajs' claims amounted to a well-founded fear of a neighbor who was threatening Mr. Volaj regarding his attempts to recover his land and did not amount to a claim for asylum. (J.A. at 40). The immigration judge found that there were too many inconsistencies in the evidence. In particular, the immigration judge found that Mr. Volaj's testimony was not credible because it directly contradicted his wife's testimony in her credible fear interview at the airport. The immigration judge denied the Volajs' petitions for asylum.

On April 28, 2003, the Volajs filed a motion to appeal the immigration judge's decision. On June 15, 2004, the Board of Immigration Appeals ("BIA") summarily affirmed the immigration judge's decision without an opinion. On July 12, 2004, the Volajs petitioned this Court for review of the BIA's denial of his petition for asylum.

## II.     JURISDICTION

This Court has jurisdiction pursuant to the Immigration and Nationality Act ("I.N.A.") § 1252(a)(1) to review final orders of removal.  8 U.S.C. § 1252(a)(1).  The BIA's decision affirming the immigration judge's decision without an opinion is considered a final agency determination. *See Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (citing 8 C.F.R. § 1003.1(e)(4)(ii)).

## II.     ANALYSIS

This Court reviews the decision of the immigration judge directly when the BIA affirms the immigration judge's decision without an opinion.  *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005); *Hasan v. Ashcroft*, 397 F.3d 417.  The denial of a petition for asylum is reviewed to determine whether the immigration judge's decision is supported by substantial evidence. *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004).  Under this standard, this Court must uphold the immigration judge's findings as long as they are "supported by reasonable, substantial, probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).  Reversal of a factual determination is only warranted when the reviewing court finds that the evidence not only supports a contrary conclusion, but compels it.  *Dorosh v. Ashcroft*, 398 F.3d 397, 381 (6th Cir. 2004); *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004); *Klawitter v. INS*, 970 F.3d 149, 152 (6th Cir. 1992).

Petitioners appeal the denial of their asylum application on three grounds: (1) there was credible evidence to support their petition for asylum; (2) they did not receive a fair review of their case; and (3) the BIA improperly affirmed the immigration judge's decision without an opinion.

### A.     Petition for Asylum

The Attorney General has discretion under the INA to grant asylum to a "refugee." INA § 208(b), 8 U.S.C. § 1158(b). A refugee is defined as a person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Disposition of an application for asylum requires a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the statute, and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987)).

In order to demonstrate that the Volajs qualify as refugees, they must establish either that they have suffered actual past persecution or that they have a well-founded fear of future persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998); 8 C.F.R. § 208.13(b) (2004). This Court has held that "persecution" within the meaning of § 1101(a)(42)(A) "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution. *Id*. at 389; 8 C.F.R. § 208.13(b)(1)(i).

An alien may establish a well-founded fear of future persecution by demonstrating: (1) that he has a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there is a reasonable possibility of suffering such persecution if he were to return to that country; and (3) that he is unable or unwilling to return to that country because of such fear. *Mikhailevitch*, 146 F.3d at 389; 8 C.F.R.

§ 208.13(b)(2)(i). A well-founded fear of persecution thus has both a subjective and an objective component: an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an "objective situation" under which his fear can be deemed reasonable. *Perkovic*, 33 F.3d at 620-21. "A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported." *Id.*

There is substantial evidence to support the immigration judge's determination that the Volajs did not present credible evidence in support of their petition for asylum and failed to meet their burden to establish a well-founded fear of past or future persecution.

### 1.    Substantial Evidence Supported the Adverse Credibility Determination.

The immigration judge found that the Volajs did not present credible evidence in support of their claim for asylum. Credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). The substantial evidence standard is deferential, and the decision must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). This Court must affirm the immigration judge's determination unless "the evidence not only supports a contrary conclusion, but indeed compels it." *Csekinek v. INS*, 391 F.3d 819, 822 (6th Cir.2004). The credibility determination "must be supported by specific reasons," and "[a]n adverse credibility finding must be based on issues that goes to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); 8 U.S.C. § 1252(b)(4)(B) (stating that a credibility determination is conclusive unless any reasonable factfinder would be compelled to conclude to the contrary).

The immigration judge found that there were many inconsistencies in the evidence presented in support of the Volajs' asylum claim. The main inconsistency was between the testimony that Mrs. Volaj gave at her credible fear interview at the airport and in the Volajs' petition for asylum and Mr. Volaj's testimony at the asylum hearing.

In her credible fear interview, Mrs. Volaj testified that she was attempting to enter the United States for a better life and freedom. (J.A. at 140). She indicated that she was afraid to go back because they had a very poor life in Albania. Further, she admitted that her family did not have any problems with the Albanian government. (J.A. at 144). In Mr. Volaj's credible fear interview, he stated that his old neighbors would kill him if he went back to Albania because he had a fight about the farmland. (J.A. at 137). The immigration judge found the prior testimony of his wife to be entirely credible. (J.A. at 42).

Two years after the credible fear interview, in the petition for asylum Mr. Volaj stated that he was seeking asylum based on his membership in a particular social group. He indicated that he was afraid that the Albanian authorities would beat or murder him. He alleged that his fear was based on the last three times he made contact with the Albanian authorities and they threatened to kill him. (J.A. at 91).

In his testimony at the asylum hearing, he testified about three incidents where the police beat him. The Volajs attribute the inconsistencies in their testimony to their fear of retaliation if they were sent back to Albania and problems with the interpreter. The immigration judge found no evidence or testimony to substantiate  why the Albanian authorities would beat Mr. Volaj. (J.A. at

40). After hearing all of the evidence, the immigration judge found that at best Mr. Volaj testified credibly that he was involved in a land dispute with his neighbor. (J.A. at 39).

Overall, Volaj's testimony could be viewed as inconsistent and not credible. The credibility issues go to the heart of their claim for asylum. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (stating that an adverse credibility finding must be based on issues that goes to the heart of the applicant's claim). Thus, there was substantial evidence to support the immigration judge's denial of asylum.

### 2. Eligibility for Asylum

Assuming that the Volajs proffered credible evidence, there was substantial evidence to support the denial of their petition for asylum. The Volajs could not prove either that they suffered actual past persecution or that they have a well-founded fear of future persecution.

First, the Volajs cannot establish that they were a part of a protected group. The immigration judge did not discuss this in the deportation order. The Volajs alleged that they were members of the Society of Ex-Politically Persecuted Persons. The immigration judge consulted the publication, Albania: Profile of Asylum Claims[3] ("the Profile"), which was proffered by the government at the asylum hearing. (J.A. at 127). The Profile indicates that asylum seekers cite this nonprofit organization often in support of asylum claims. This organization provides benefits such as education, employment, and financial assistance to its members. This does not conclusively establish membership in a persecuted social group. *See In the Matter of Acosta*, 19 I. & N. Dec. 211,

---

[3]This publication is produced by the Department of State's Office of Country Reports and Asylum Affairs for use by the Executive Office of Immigration Review and the Immigration and Naturalization Service in assessing asylum claims. (J.A. at 125).

233, 1985 WL 56042 (B.I.A. Mar. 1, 1985) (stating that a particular social group is a group of persons all of whom share a common immutable characteristic).

Second, the immigration judge found that the Volajs could not establish a well-founded fear of persecution because their main claim "center[ed] around his fear of a neighbor who [was] threatening regarding [sic] him trying to recover his land which were [sic] confiscated by the Communist." (J.A. at 40). The immigration judge found that this was a case of economic refugees coming to the United States. He stated that asylum claims are not for economic refugees. Accordingly, he could not authorize the Volajs to stay in the United States under the asylum laws simply because they are looking for a better life. (J.A. at 44). The immigration judge found that even if the Albanian government has failed to recoup the Volajs land back for them, this would not be a well-founded fear of persecution.

## C.     Fair Review of Asylum Claim

For the first time on appeal, the Volajs raise the claim that the immigration judge was prejudiced and unfair. On appeal to the BIA, the Volajs only argued that there was credible evidence to support the immigration judge granting his petition for asylum. (J.A. at 9-10). This Court does not have jurisdiction to review claims where the petitioner failed to exhaust administrative remedies. *Perkovic*, 33 F.3d at 619; *Harchenko*, 379 F.3d 405, 407 (6th Cir. 2004) (citing *Harchenko v. INS*, 22 Fed. Appx 540, 543 (6th Cir. 2001)).

Even if this Court had jurisdiction, the immigration judge has broad discretion to control the administration of deportation proceedings, as long as the alien receives a full and fair hearing under the Fifth Amendment. *Scorteanu v. INS*, 339 F.3d 407, 413 (6th Cir. 2003) (citations omitted). *See*

*also Aguilar-Solis v. INS*, 168 F.3d 565, 568 (1st Cir. 1999) (stating that immigration judges, like other judicial officers, possess broad discretion over the conduct of trial proceedings."). A review of the record shows no evidence that the Volajs were prejudiced or that the immigration judge did not give them a full and fair hearing.

**D.      The BIA properly Streamlined the Decision of the Immigration Judge**

The Volajs contend that the BIA erred when it summarily affirmed the immigration judge's decision denying their petition for asylum without an opinion. They state that the use of streamlining in this case was inappropriate because the immigration judge's decision was incorrect, his errors were not harmless, and that this case raised substantial issues that warranted a written opinion.

8 C.F.R. § 1003.1(e)(4) provides that a single member of the BIA may affirm an immigration judge's decision without stating the basis for affirmance. In *Denko v. INS*, 351 F.3d 717, 721 (6th Cir. 2003), this Court fully addressed due process violations and upheld the streamlining process as constitutional.

More recently, in *Rreshpja v. Gonzales*, 420 F.3d 551, 558 (6th Cir. 2005), this Court declined to decide whether the decision to streamline the petitioner's case was reviewable where no novel factual or legal questions were presented. *Id.* at 558 (citing *Chen v. Ashcroft*, 378 F.3d 1081, 1086-87 (9th Cir. 2004) (holding that the BIA lacked the authority to streamline a petitioner's appeal because no BIA or federal court precedent squarely controlled the legal issue presented and the issues raised on appeal were substantial)). *See also Smirko v. Ashcroft*, 387 F.3d 279 (3d Cir. 2004) (holding that the BIA's summary affirmance without opinion was erroneous where a novel issue of

statutory construction was presented); *Hauod v. Ashcroft*, 350 F.3d 201 (1st Cir. 2003) (holding that

the BIA summary affirmance without opinion was erroneous where the BIA did not provide a reason

for departing from its own precedent).

Like *Rreshpja*, this case does not present a novel fact or legal question, nor is there any

deviation from regulatory requirements that would affect the requirements for establishing asylum.

This case presents a straightforward asylum claim, which the BIA properly streamlined.

### III.    CONCLUSION

For the reasons stated above, we **DENY** the petition for review.