**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0448n.06**

**No. 08-4034**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JIBRILA DIALLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **PETITION FOR REVIEW OF ORDER OF** |
| | ) | **BOARD OF IMMIGRATION APPEALS** |
| ERIC H. HOLDER, JR., | ) | |
| Attorney General of the United States, | ) | |
| | ) | |
| Respondent. | ) | |

**FILED**
**Jul 01, 2009**
LEONARD GREEN, Clerk

BEFORE: KEITH, CLAY, and GIBBONS, Circuit Judges.

**KEITH, Circuit Judge**. Petitioner Jibrila Diallo ("Diallo") seeks this Court's review of an order from the Board of Immigration Appeals ("BIA"), denying his application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). Additionally, he raises a due process claim, alleging the Immigration Judge ("IJ") and the BIA failed to establish clear administrative findings, prejudged his case, and denied him the opportunity to respond to the finding that he failed to satisfy his burden of proof by failing to submit sufficient corroborating evidence. Because we find Diallo's due process claim to be meritless, and because substantial evidence supports the BIA's decision, we **DENY** the petition for review and **AFFIRM** the BIA's decision.

**I.**

**A. Procedural History**

Diallo is a native and citizen of Sierra Leone. He was admitted with a false passport to the United States at New York, New York, on October 20, 2002. He later applied for asylum with the Immigration and Naturalization Service ("INS"), now referred to as the Department of Homeland Security ("DHS"). The INS denied Diallo's application for asylum and he was served with a Notice to Appear on March 22, 2004. During removal proceedings on April 12, 2005 in Cleveland, Ohio, Diallo conceded removability. He also sought a hearing date on his requests for asylum, withholding of removal and protection under the CAT.

Diallo's merits hearing was held on October 16, 2006 in Cleveland, Ohio. He was the only testifying witness, and spoke before the IJ with the help of a Fulani interpreter. He also submitted a list of exhibits, including a State Department Report.

An oral decision was rendered the day of the hearing. The IJ found Diallo to be a credible witness but determined that he failed to present sufficient objective evidence showing a "realistic likelihood of persecution," and, therefore, failed to establish a well-founded fear of persecution. The IJ also denied Diallo's request for withholding of removal and relief under the CAT, and ordered Diallo removed to Sierra Leone. Diallo appealed the IJ's decision, and the BIA dismissed his appeal in an order and opinion dated July 23, 2008.

The instant petition for review timely followed on August 21, 2008.

### B. Factual Background

### I. Petitioner's Testimony

Before the IJ, Diallo testified that he was born on February 2, 1957 in Sierra Leone. He is married with four children. While Diallo was in Sierra Leone, he worked as a diamond dealer, and

was considered well-off compared to others in his village. The people in his village knew that he bought and sold diamonds.

On April 15, 1999, while walking on the street, Diallo was attacked by rebels who arrested him, along with about 30 other people. The rebels told Diallo that he was being arrested for his money, and stole the $7,000 in U.S. currency that he was carrying at the time for his business. Because the rebels wanted more money, they took those they arrested to their camp in a nearby forest. Diallo was held there for 15 days. He testified that at this camp, he "was tortured," his hands were tied, and he was beaten because he, along with the other captives, were businessmen and the rebels said they "got the whole money." As a result of the beating, Diallo testified that his eye is "still red." Diallo eventually escaped when the rebel camp was attacked by the government military.

Diallo returned to his village and his home. At this point, people in the village who worked for the chief went to the police to say that Diallo, along with the other captives, were "with the rebel [sic] so we are rebels." Afterwards, Diallo was taken in for interrogation on three separate occasions. Before each meeting, the police would come by Diallo's home to get him, and he would endure three to four hours of questioning. The police repeatedly asked Diallo if he was one of the rebels, or if he was feeding them or helping them. Diallo testified that the interrogators threatened to jail him or kill him if he did not tell the truth. Diallo also stated that he lost his home around this time, when the government found out that he had not finished his loan payments.

A friend of Diallo's, who had seen Diallo taken in several times for interrogation, told him that "this is not going to end up good." About 10 or 15 days later, Diallo left Sierra Leone, without his family, to stay with a business associate in Guinea. Diallo's wife and children later joined him

at this man's house. They stayed in Guinea from 1999 to 2002. In the middle of 2002, after elections were held in Guinea, Diallo's business associate decided to return to Senegal. At this time, Diallo tried to return to Sierra Leone but was told at the border by some people who knew him that he would be killed if he returned. These same people told Diallo that other people in the same situation as Diallo had returned to Sierra Leone, were considered by the government to be "part of those liberals," and were killed. Diallo subsequently returned to his business associate's home in Guinea, where his business associate offered to finance his trip to Europe or elsewhere. Diallo found a smuggler to help him gain entry into the United States, while his wife and children went to stay with a relative in Senegal.

Diallo testified that if he is forced to return to Sierra Leone today, he believes he will be killed. He also testified that he has friends who write him letters informing him that if he returns to Sierra Leone, he may be killed. On cross-examination, Diallo conceded that he never belonged to any political organizations in Sierra Leone and that, at his age, he cannot join the military.

### ii. The IJ's Decision

The IJ determined that Diallo's testimony was credible but that he failed to meet his burden of proving a well-founded fear of persecution or the higher burden for withholding of removal, because "the record does not contain any objective evidence which is significantly probative of a realistic likelihood of persecution." The IJ further held that while Diallo was taken by rebel forces, they did so to rob him, not "because of any imputed political opinion." Therefore, Diallo's treatment by the rebels did not constitute persecution, since the robbery and apprehension were not "for any reasons enumerated in the [Immigration and Nationality] Act."

As for Diallo's contention that he suffered past persecution because the government imputed a political opinion to him, the IJ noted that Diallo was interrogated on three occasions but failed to demonstrate that he suffered harm as a result of these interrogations. The IJ, therefore, found that Diallo had not established past persecution. Additionally, the IJ cited the *Country Report*s *on Human Rights Practices* - 2005 (the "2005 Country Report"), released by the Bureau of Democracy, Human Rights, and Labor on March 8, 2006, which "indicate that Sierra Leone is now a constitutional republic and that the devastating 11 year conflict officially ended." The IJ further noted that there is now a civilian government in Sierra Leone. The IJ denied Diallo's claim for protection under the CAT, and ordered him removed to Sierra Leone.

### iii. The BIA's Decision

The BIA upheld the IJ's factual findings, and found that: (1) even if Diallo suffered past persecution, he has not shown it was on account of any protected ground, (a) as the rebels kidnaped him to obtain money and (b) because Diallo did not show that his treatment by the government amounted to persecution; further (2) the background evidence demonstrates that conditions have changed in Sierra Leone. The BIA noted the absence of any indication "in the Country Reports that former rebels or those thought to have had ties to the rebels are in danger." The BIA also denied Diallo's claims for withholding of removal and protection under the CAT.

### II.

Where, as here, the BIA adopts the IJ's decision with additional commentary, we review the IJ's decision, as supplemented by the BIA, as the final administrative order. *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Our Court reviews the BIA's legal determinations *de novo* and its

factual findings under the deferential substantial evidence standard. *Tapucu v. Gonzales*, 399 F.3d 736, 738 (6th Cir. 2005); *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2003). We must uphold the BIA's determination as to whether Diallo sustained his burden of proof regarding eligibility for asylum and withholding of removal "if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Duhani v. Gonzales,* 214 F. App'x 541*, 545 (6th Cir. 2007) (citations omitted)). Under this standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Hassan*, 403 F.3d at 434. A reviewing court should not reverse the BIA's factual findings "simply because it is convinced that it would have decided the case differently." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (citations and internal quotation marks omitted).

## A.

Before we reach the merits of Diallo's asylum claim, we must address his claim that he was denied due process of law in his hearings before the IJ and the BIA. A petitioner is deprived of due process: (1) when there was a defect in the removal proceedings; and (2) the alien was prejudiced because of it. *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008) (citing *Vasha v. Gonzales*, 410 F.3d 863, 872-73 (6th Cir. 2005)). In this case, Diallo asserts that he was deprived of due process of law by the BIA and the IJ whom he alleges: (1) issued decisions that lacked clear administrative findings; (2) demonstrated prejudgment of his case; and (3) denied him the opportunity to respond to the agency's finding that he failed to sustain his burden of proof. The Government asserts that Diallo is statutorily barred from bringing these issues on appeal because they are being raised for the first time. The Government's argument is belied by the record. In Diallo's brief to the BIA, he

argued that the IJ failed to allow him an opportunity to provide additional evidence or witnesses, issued a confusing decision, and omitted undisputed and material facts. There is no evidence in the record, however, that Diallo expressly raised his contention that the IJ prejudged his case. Therefore, we decline to review this claim on appeal. *See Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005); *see also Volaj v. Gonzales*, 158 F. App'x 683, 688-89 (6th Cir. 2005). Diallo's other claims against the BIA have been exhausted, since a motion for reconsideration of the BIA's decision is not required to exhaust administrative remedies. *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994).

## I. Clear Administrative Findings

Diallo first asserts that the agency's "poorly reasoned decisions which lacked clear administrative findings" deprived him of a fair hearing and procedural due process under the Fifth Amendment. Diallo relies on *Gjyzi v. Ashcroft*, 386 F.3d 710 (6th Cir. 2004), to assert that the lack of clear administrative findings in the agency's decision violates his due process rights. In *Gjyzi*, our Court vacated the agency's order and remanded for further explanation, because the BIA reversed the IJ's adverse credibility determination but affirmed the IJ's ultimate conclusion, without *any* additional explanation. *Id*. at 713. Here, Diallo asserts that many of the BIA's and the IJ's findings "lacked a rational explanation," were confusing and hindered meaningful appellate review, citing, as an example, the IJ's failure to use subheadings. *Gjyzi*, however, does not mandate this type of compliance with rigid structural formats. *Gjyzi*, 386 F.3d at 716. Diallo takes further issue with the IJ's finding that he did not suffer past persecution by the government as a result of the interrogations, despite Diallo's credible testimony that he was forced to leave his village due to a

friend's warning that his life was in danger, and his own fear that he would disappear. This argument goes to the IJ's interpretation of the facts, and application of the law to the facts, not to any failure on the IJ's part to provide a clear explanation of its factual findings.

Diallo finds further fault with what he considers the IJ's failure to specifically state: (1) that the required nexus between the rebels' robbery of Diallo and one of the statutory grounds for asylum was missing; and (2) that there had been a favorable "change of country conditions." The record, however, demonstrates that the IJ clearly addressed both issues. The IJ's factual findings are not rendered unclear merely because they are not specified in the terms Diallo wanted.

Additionally, Diallo contends that the BIA distorted the facts in its opinion by: (1) describing Diallo as a diamond trafficker; (2) failing to mention that Diallo had suffered a permanent eye injury as a result of his detention at the rebel camp; (3) failing to mention that Diallo had fled rather than merely left Sierra Leone; and (4) omitting from the facts that Diallo had been warned not to return to Sierra Leone by diamond dealer associates of Diallo, rather than just "friends" as noted by the BIA. Even assuming *arguendo* that Diallo is correct, he nevertheless has failed to allege how any such factual distortion prejudiced the outcome of the administrative proceedings, particularly since he concedes that many of the facts allegedly distorted or omitted by the BIA had been noted by the IJ, whose decision the BIA ultimately affirmed. Diallo also contends that many of the BIA's findings were "summary in nature and lacked factual support." The BIA's summary affirmance of an IJ's decision alone does not violate a petitioner's due process rights. *Gjyzi,* 386 F.3d at 716.

Next, Diallo alleges that the BIA's decision was confusing for: (1) finding that even if Diallo had suffered past persecution, it was not on account of a protected ground, and failing to

specify whether it was referring to persecution by the rebels or the government; (2) finding that Diallo did not show his treatment by the government amounted to persecution, and failing to specify whether the omission related to the level of harm or the required nexus to a protected class; and (3) failing to specify whether the background evidence demonstrates favorable or unfavorable changed conditions in Sierra Leona, and whether said change related to Diallo's persecution. Diallo is manufacturing ambiguity where none exists. The record demonstrates that the IJ and the BIA clearly laid out their findings and supporting rationale. The BIA noted that Diallo had not shown persecution by the Government. Therefore, the only treatment that may have risen to the level of persecution was his kidnaping and beating by the rebels, which was done for economic reasons and not on account of any protected ground. Concerning the second alleged error, it is apparent from the IJ's decision and the BIA's additional comments that the agency found the government interrogation of Diallo did not rise to a level of harm that would constitute persecution. And, finally, it is clear from the BIA's opinion that the change in Sierra Leone was favorable, as the BIA noted "there was no indication in the Country Reports that former rebels or those thought to have had ties to the rebels are in danger," which pertains to Diallo's claim that he feared persecution by the Government because of an imputed political opinion. Thus, Diallo's contention that he was denied due process by the agency's confusing factual findings is meritless.

### ii. Prejudice

Diallo additionally contends that the BIA prejudged his case by relying on personal belief and slanting the facts. Specifically, Diallo argues that the way in which the BIA recited the IJ's factual facts was slanted negatively against him, demonstrating the BIA's prejudice. Diallo cites

the BIA's description of him as a "trafficker" rather than a "diamond dealer," notes that the BIA said

he "left" rather than "fled" Sierra Leone, and states that he had been "warned by friends not to return

to Sierra Leone" but "failed to add that such warning was made based upon the demise of other

returning diamond dealers." Taking as true Diallo's contention that the BIA slanted the IJ's factual

findings, Diallo, nonetheless, has failed to demonstrate how the proceedings would have turned out

differently but for this alleged error. The BIA's decision to deny Diallo asylum rested in large part

on (1) his failure to demonstrate past persecution, which is not shown by the pleading of speculative

threats, as was done here, and (2) a favorable change in country conditions that is not implicated by

the language with which he takes issue. Therefore, Diallo has failed to demonstrate a due process

violation resulting from the BIA's alleged prejudice.

### iii. Corroborating Evidence

Diallo next contends that he suffered a due process violation when the IJ denied his asylum

claim based on his failure to provide "objective evidence" of a well-founded fear of persecution, and

allegedly deprived him of an opportunity to demonstrate that he could provide such "objective

evidence." Where it is reasonable to expect corroborating evidence, and an applicant has failed to

present such evidence, her claim may be denied for failure to meet her burden of proof. *See Dorosh*

*v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004); *see also Vasha*, 410 F.3d at 871 n. 3. Diallo was

obligated to present objective evidence demonstrating that those perceived by the government to be

rebel supporters were being persecuted, or explain why he could not provide this information. *See*

*Dorosh*, 398 F.3d at 383-84. It was not the IJ's burden to request this information. Moreover, if

additional material facts or objective evidence was found after the IJ's decision was rendered that

would have supported Diallo's asylum claim, then Diallo could have filed a motion to reopen or remand. 8 C.F.R. §§ 1003.1(d)(3)(iv), 1003.2(c)(1). Diallo was not deprived of due process when the IJ did not provide a further opportunity to submit additional objective evidence.

Diallo also contends that the IJ and the BIA made no reference to the materials he submitted, showing that he had been informed in 2002 it would be dangerous for him in Sierra Leone because other businessmen returning under similar circumstances had been killed by the Government. This evidence, however, does not address the changed country conditions in Sierra Leone, including the absence of evidence in the 2005 Country Report of government persecution of rebel supporters. We can overturn the agency's factual findings only upon evidence that compels us to do so. No such evidence has been presented here.

**III.**

Turning to the merits of Diallo's asylum claim, to establish eligibility for asylum he must demonstrate that he qualifies as a refugee. 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1101(a)(42)(A). A "refugee" is defined as one who is unable or unwilling to return to his or her country of nationality, and is unable or unwilling to avail himself or herself of the protection of that country, because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.13(b); 8 U.S.C. § 1101(a)(42)(A). Once an alien demonstrates that he or she is a refugee, the Attorney

General has the discretion to decide whether to grant the applicant asylum. 8 U.S.C. § 1158(b)(1)(A).[1]

## A. Past Persecution

To demonstrate persecution "the conduct on which the application for asylum is based must go beyond what might reasonably be characterized as mere harassment . . . ." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005)). "'Persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998); *see also Ndrecaj*, 522 F.3d at 674. Our Court, citing a Ninth Circuit case, has held that "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (citing *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995)). In assessing whether an alien has suffered persecution:

> the critical factor is the overall context in which the harmful conduct occurred. It is not sufficient that the applicant has been subjected to indiscriminate abuse, such as physical force or violence employed against a crowd of demonstrators, or has been the victim of a random crime. Instead, the applicant must establish that he or she was specifically targeted by the government for abuse based on one of the statutorily protected grounds.

*Gilaj*, 408 F.3d at 285.

-----

[1]On appeal, while Diallo includes within his description of past persecution his treatment by the rebels, his claim for asylum is based upon his contention that he suffered past persecution and fears future persecution from the Government. We, therefore, will not address his treatment by the rebels. Additionally, Diallo failed to raise his claim for withholding of removal on appeal, thus, we will not review said claim here.

Diallo contends that he suffered past persecution on account of an imputed political opinion by the Government that he is a rebel supporter. It is unclear "whether imputed political opinions may form the basis of an asylum claim." *See Pascual v. Mukasey*, 514 F.3d 483, 486 (6th Cir. 2007). Because Diallo has failed to establish persecution on account of an opinion, imputed or otherwise, we need not resolve this ambiguity here. *See id*. at 487.

The IJ found Diallo credible, therefore, we must accept his factual allegations as true. *Gilaj*, 408 F.3d at 285-86. After escaping from the rebel camp, Diallo was suspected of either being a rebel or a rebel supporter. As a result, he endured three interrogations by the Government, lasting three to four hours in duration each, and was threatened with arrest or death if he did not tell the truth. Around this time, Diallo's home was confiscated by the Government, however, Diallo admits it was due to his failure to make his loan payments. After one of Diallo's friends warned him that his "situation" was not going to end well, he fled to Sierra Leone for Guinea. Additionally, when Diallo attempted to return to Sierra Leone after three years away, he was told that he would be killed because those who had been considered rebels, and had fled and returned to Sierra Leone, had been killed.

At most, these facts show that Diallo was threatened by the Government. As detailed above, mere threats alone, without more, are insufficient to establish persecution. Moreover, we have held before that physical assault, without the need for medical attention, along with a four-day detention, and interrogations, does not rise to the level of persecution under the Immigration and Nationality Act. *Mburu v. Gonzales*, 214 F. App'x 505, 508 (6th Cir. 2007). Diallo's sufferance, therefore, of threats during a series of interrogations cannot possibly establish persecution. Diallo has failed to

demonstrate any other evidence in the record, which would compel a conclusion contrary to the agency's finding that he has not suffered past persecution.

## B.  Well-Founded Fear of Future Persecution

In order to demonstrate eligibility for asylum on the basis of a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(2), an applicant must establish that:

> (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear.

*Mikhailevitch*, 146 F.3d at 389.  "An applicant's fear of persecution must be both subjectively genuine and objectively reasonable." *Id.* Further, an applicant does not have to demonstrate a reasonable possibility he would be singled out individually for persecution, if he can show a "pattern or practice" of persecution in his country among those similarly situated to him on the basis of a protected ground, and his inclusion in or identification with this group. 8 C.F.R. § 1208.13(b)(2)(iii)(A-B).  Finally, because Diallo has failed to demonstrate past persecution, he is not entitled to the presumption of a well-founded fear of future persecution. *Gilaj*, 408 F.3d at 285.

In this case, the BIA found that "conditions have changed in Sierra Leone . . . [and] . . . there is no indication in the Country Reports that former rebels or those thought to have had ties to the rebels are in danger." Diallo contends that the BIA and IJ erred in finding that country conditions in Sierra Leone have improved, and that, in fact, conditions have "remained dangerous to him because of the ongoing corruption of the Government's security forces which routinely engaged in

arbitrary arrest, detention and abuse of detained civilians." A review of the record, in particular the 2005 Country Report, demonstrates an absence of any reports of politically motivated killings by the government or its agents, any reports of politically motivated disappearances, or any political prisoners. Additionally, the 2005 Country Report indicates that the civil war ended in Sierra Leone in 2002, national elections were held the same year, and local elections were held in 2004. United Nations peacekeepers were withdrawn in 2004. There is no objective evidence in the record demonstrating a pattern or practice of persecution among those similarly situated to Diallo, nor is there evidence that Diallo would be specifically targeted for persecution upon returning to Sierra Leone. Thus, there is substantial evidence to support the BIA's conclusion that Diallo has failed to establish a well-founded fear of future persecution.

## IV.

Lastly, Diallo has failed to demonstrate that he is entitled to the protections granted under the CAT. To qualify for relief under the CAT, the applicant bears the burden of proof in establishing that it is more likely than not that he or she would be tortured if returned to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined as:

> as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. §1208.18(a)(1); *Berri v. Gonzales,* 468 F.3d 390, 398 (6th Cir. 2006). Here, Diallo has submitted the same evidence in support of his CAT claim, as he has to prove eligibility for asylum.

Because he has failed to demonstrate that he is eligible for asylum, he necessarily has failed to demonstrate that he is entitled to the protections afforded under the CAT. *Ndrecaj*, 522 F.3d at 677; *see also Rodriguez v. Gonzales*, 441 F.3d 593, 596 (8th Cir. 2006) (noting that "[i]f a petitioner fails to establish eligibility for asylum, it is likely that he will not succeed under CAT . . . . A separate analysis under CAT is only required when the petitioner has presented evidence that he is likely to be tortured for reasons unrelated to his asylum claim").[2]

## V.

Accordingly, for the reasons stated above, we **AFFIRM** the BIA's dismissal of Diallo's appeal, and **DENY** his petition for review.

---

[2]Diallo asserts that the 2006 and 2007 Country Reports, in addition to the 2005 Country Report and Diallo's "credible testimony," demonstrate he will potentially suffer torture. We must limit our review to the "administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Diallo asserts that the 2006 and 2007 Country Reports were available to the BIA at the time it decided his case. If further fact-finding was necessary after the merits hearing, it was incumbent upon Diallo to file a motion to reopen or remand with the BIA while the appeal was pending. 8 C.F.R. §§ 1003.1(d)(3)(iv), 1003.2(c)(1).