No. 04-3881

File Name: 05a0962n.06

Filed: December 14, 2005

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

VALBONA METKO, )
)
   Petitioner, )
)
     v. ) PETITION FOR REVIEW OF AN
) ORDER OF THE BOARD OF
ALBERTO GONZALES, Attorney General, ) IMMIGRATION APPEALS
)
   Respondent. )

Before: **MARTIN**, **NELSON**, and **ROGERS**, Circuit Judges.

**DAVID A. NELSON**, Circuit Judge. This case is here on a petition for review of a Board of Immigration Appeals order denying an application for asylum. We are satisfied that the evidence presented in the immigration court, even if credible, did not compel a finding that the petitioner is a "refugee" — *i.e.*, a person who is unable or unwilling to return to her home country because of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The petition for review will be denied on that basis.

I

The petitioner, Valbona Metko, is a native and citizen of Albania. Ms. Metko entered the United States illegally in October of 2001, and the Immigration and Naturalization Service initiated removal proceedings against her.

Conceding her removability, Ms. Metko applied for asylum and withholding of removal on the ground that she and her family had been persecuted for their support of the Democratic Party of Albania. Ms. Metko expressed fear that she would be imprisoned, tortured, or killed by the socialist government if she were returned to her home country.

In her asylum application and an attached statement, Ms. Metko explained that she had been threatened by former communists and "left wing extremists" since June of 1997. She was jailed for 24 hours "under threats and maltreatment" after participating in a political protest in September of that year.

In 1998, Ms. Metko said, she married a man from a family of left wing extremists. She soon discovered that her husband and brother-in-law were involved in trafficking of young women. When Ms. Metko expressed opposition to this activity, her husband beat her and threatened to kill her. Ms. Metko's brother-and-law and father-in-law also threatened to kill her and her family because of their political beliefs. Ms. Metko left her husband in September, 1998, but her in-laws continued to threaten her and her family, and Ms. Metko's brother was severely beaten by left wing extremists.

At a hearing before an immigration judge, or "IJ," Ms. Metko testified that she left Albania because her husband, Edmond Brahimaj, "was following [her] to kill [her]." She said that Mr. Brahimaj and his brother, both of whom were policemen, sold women as prostitutes. When Ms. Metko learned of her husband's crimes, she confronted him. He beat her, saying "[Y]ou can't tell me what I am going to do with my life. You seem to be a Democrat. You seem like you are being a Democrat and you want to rule in this house." There were additional beatings, Ms. Metko testified, two of which resulted in miscarriages. Mr. Brahimaj threatened to kill Ms. Metko if she did not remain silent. Brahimaj's brother, mother, and father also threatened Ms. Metko, saying she "couldn't live like [she] used to live because [she] had been a Democrat . . . ."

Ms. Metko testified that she left her husband in September of 1999[1] and stayed with an aunt in Greece until July, 2001. During her absence, police went to her family's house and harassed her brother, Fatos Metko. Ms. Metko was not harmed upon returning to Albania in July of 2001, but Fatos Metko was beaten and threatened by the police. Realizing that her husband was "still looking for [her]," Ms. Metko left Albania soon thereafter.

In response to a question posed by the IJ, Ms. Metko confirmed that her "problems with [her] husband were a result of the discussions [she] had on his involvement in prostitution." Ms. Metko could not explain why her parents, in a declaration she submitted

---

[1]Ms. Metko testified that her application, which said she had left her husband in September of 1998, was in error.

to the immigration court, said that Mr. Brahimaj mistreated her because of differences in political opinion.

Fatos Metko also testified at the hearing. He said that his sister told him about the threats she had received from her husband's family and about the beatings her husband had given her. Mr. Metko said he took Ms. Metko to Greece in September of 1999 because of "the family problem, her husband's family." The police demanded that Mr. Metko return his sister to Mr. Brahimaj, and they beat him when he did not comply.

The IJ denied Ms. Metko's application. Citing "critical inconsistencies" between Ms. Metko's application for asylum and her hearing testimony, the IJ found that Ms. Metko was not credible. The IJ concluded further that Ms. Metko's evidence, even if credible, did not establish that she had been persecuted because of her political opinion or membership in a particular social group.

The Board of Immigration Appeals affirmed the IJ's decision, and Ms. Metko filed a timely petition for review.

II

The Attorney General may grant asylum to an alien who is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). See 8 U.S.C. § 1158(b)(1). The statute defines "refugee" as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself

of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). The Board's determination that Ms. Metko is not a refugee is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* § 1252(b)(4)(B); see *Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005).

Assuming, for the sake of analysis, that a reasonable adjudicator would be compelled to accept Ms. Metko's testimony as truthful, we do not think the record requires a finding that she was persecuted on one of the grounds identified in the statute.

Although Ms. Metko's asylum application spoke of an arrest and detention, threats, and "maltreatment" attributable to her political beliefs, Ms. Metko did not mention these matters in her direct testimony.[2] She focused instead on abuse she received from her husband and his family — abuse that she said was prompted by her opposition to Mr. Brahimaj's criminal activity. Fatos Metko reiterated that Mr. Brahimaj and his family beat and threatened Ms. Metko to keep her quiet about Brahimaj's crimes. Admittedly, some of the threats referred to Ms. Metko's belief in a democratic system of government. But a reasonable adjudicator could conclude that these references were incidental to the threats' purpose of silencing Ms. Metko. We note, in this connection, that Ms. Metko could not explain her parents' statement that differences in political opinion were what had caused her

---

[2]On cross-examination, Ms. Metko initially denied that she had been detained by the authorities in 1997. She seemed to retreat from that testimony when reminded of the contrary statement in her asylum application.

mistreatment at the hands of her husband. Taking the record as a whole, we cannot say that a reasonable adjudicator would have been compelled to find that Ms. Metko was persecuted on account of her political opinion.

At oral argument in our court, Ms. Metko did not contend that the record compelled a finding of political persecution. She argued instead that she was persecuted for her membership in a social group consisting of (potential) whistle-blowers. The argument is not persuasive.

"The [Board] has defined a 'social group' to be 'a group of persons all of whom share a common, immutable characteristic.'" *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)). "[W]hatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Acosta*, 19 I. & N. Dec. at 233.

Opposition to illegal activity does not strike us as an immutable characteristic by which an identifiable group can be defined. We presume that a great number of Albanians oppose the selling of young women into prostitution. Nothing in the record suggests that some Albanians, Ms. Metko among them, have made such opposition "fundamental to their individual identities or consciences."

It might be argued that Ms. Metko is situated differently than persons whose opposition to human trafficking is merely abstract. She is in a position to report actual traffickers to the authorities. But Ms. Metko does not claim to have done so, and there is no evidence that she would have done so if not for the threats of her husband and his family. If there is a social group consisting of whistle-blowers or potential whistle-blowers, the record does not compel a finding that Ms. Metko is a member.

In short, we think a reasonable adjudicator could conclude that the abuse Ms. Metko received from her husband and in-laws was not motivated by her political opinion or her membership in a particular social group. We have no basis, therefore, on which to disturb the Board's finding that she is not eligible for asylum. The petition for review is **DENIED**.

BOYCE F. MARTIN, JR., Circuit Judge, concurring. If I had been the immigration judge in this case, I believe I would have granted relief to Ms. Metko given the facts of this case.

The immigration court in this case held and the majority heavily relies on the finding that Metko's testimony lacked credibility. The immigration court concluded that Metko was inconsistent in her testimony as to whether her persecution was based on her political affiliations or her knowledge of her husband's illicit activities. No matter what one labels her fear as stemming from, it is clear that Metko's fear stems from her husband's connections to those in power in Albania. Holding different views from her husband, Metko claims she is being persecuted for her political views, whether they be an open affiliation with the Democratic Party or for speaking up against her husband's prostitution business. Additionally, the immigration court failed to give any substantial reason for rejecting the testimony of Metko's brother, Fatos. If the court found his testimony to be truthful, then this would surely have bolstered Metko's credibility in comparison to the minor inconsistencies that led to the adverse credibility finding.

Nevertheless, the fact of the matter is that I was not the immigration judge in this case and I am bound in this appellate review by the congressionally prescribed standard of review that is, unfortunately, nearly insurmountable for the appealing alien. 8 U.S.C. § 1252(b)(4)(B); *see Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005). Although I am sympathetic with the difficulties faced by immigration courts and its caseload, it should be responsible for providing a complete and accurate determination on asylum claims. *See Niam v. Ashcroft*, 354 F.3d 652 (7th Cir. 2004); *Guchshenkov v. Ashcroft*, 366 F.3d 554 (7th Cir. 2004). Let us not forget the impact of these hearings on the lives of the individuals involved. The least we can ask of the immigration court is to provide a thorough and complete analysis for its determination beyond identifying minor

inconsistencies, cultural differences, or language barriers. However, in this case I am bound by the

stiff standard of review and must, therefore, concur.