NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0857n.06
Filed: November 22, 2006

No. 05-3338

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NDOC KODRA; MERITA KODRA; ARMANDO KODRA; EMANUEL KODRA; ELTON KODRA, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | ON PETITION FOR REVIEW FROM A FINAL ORDER OF |
| ALBERTO R. GONZALES, Attorney General, | ) ) ) | THE BOARD OF IMMIGRATION APPEALS |
| Respondent. | ) ) | |

O R D E R

Before: KEITH and COLE, Circuit Judges; STEEH, District Judge.[*]

Ndoc Kodra petitions for judicial review of an order of the Board of Immigration Appeals ("BIA"), which affirmed an immigration judge's finding that he was subject to removal as an illegal alien. The petition also includes his wife, Merita, and their three minor children, Armando, Emanuel, and Elton. The parties have waived oral argument, and we unanimously agree that it is not needed in this case. Fed. R. App. P. 34(a).

Kodra is a native and citizen of Albania, who entered the United States without valid documentation in 2001. He conceded removability and filed a timely application for asylum, the withholding of removal, and relief under the United Nations Convention Against Torture. Kodra's

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

wife and children were included on his application. Kodra and his wife testified that they had been persecuted by Muslims in Albania because of their Catholic religion. An immigration judge ("IJ") found that their testimony was not fully credible and denied the applications for relief. The BIA adopted the IJ's decision and dismissed Kodra's administrative appeal.

Kodra's current brief does not contain any clear challenge to the denial of his claim for relief under the Convention Against Torture. Therefore, he has abandoned that claim for purposes of judicial review. *See United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001). It also appears that he has abandoned any claim that he was persecuted based on his political beliefs. *See id.*

To obtain asylum, Kodra must show that he is a refugee whose application merits a favorable exercise of administrative discretion. *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). A refugee is an alien who is unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To qualify for the withholding of removal, Kodra must show that there is a clear probability that he will be persecuted based on a statutorily protected ground. *See Mikhailevitch*, 146 F.3d at 391.

In his application, Kodra described the factual basis of his claim as follows:

> My family and I are devout Roman Catholics. . . . The village where I grew up is called Shtoj I Ri. Shtoj I Ri is majority Muslim and, in the past 10-15 years, has seen an influx of Muslims from Kosovo and northeast Albania. From a very early age, I experienced discrimination at the hands of our Muslim neighbors and the Muslim officials who ran the village commune. After the fall of the Hoxha regime in 1991, my family was granted several acres of commune land that was distributed to the families of the government commune in Shtoj I Ri to which we belonged. We could not farm this land because our Muslim neighbors threatened to kill us if we did so; the land was already being farmed by Muslims who had seized the land . . . .
>
> In 1996, the ruling Democratic Party informed me in writing that I was awarded this land but a Muslim neighbor, Ahmed Leka, again threatened to kill me if I tried to take the land that was legally given to me. From that time on, our relations with our Muslim neighbors became a virtual war between the ever-

increasing number of Muslim and the 7-8 Catholic families left in Shtoj I Ri. Rocks were thrown at our house and my brothers and I were provoked into fights on a regular basis. After the collapse of the pyramid schemes in 1997, anarchy prevailed in northern Albania. The police left their posts and the new Socialist government appointed Muslims to fill key positions in Shkoder which is the closest city to our village. Our Muslim neighbors became even more bold in their attacks on us.

(I-589 Application for Assylum, p.4) (Joint App. p. 267).

Kodra's testimony indicated that the most serious instances of abuse arose from a property dispute that he had with his neighbor. He now summarizes that testimony as follows:

Ndoc Kodra received land from the government, but was unable to use it because Ahmet Leka, a Muslim local chief of military police, threatened him. At some point, Ahmet Leka told Ndoc Kodra that he did not want to see any Catholics in the village of Shtoj Ri, that he would make all Catholics leave the village, and that he desired to see all Catholics like pigs.

Ndoc Kodra complained to the leader of the police about his problem with Ahmet Leka, but it went unresolved. Ndoc Kodra also took his case to court, but his case was thrown out. Ahmet Leka now owns Ndoc Kodra's property because the government never provided Ndoc Kodra with proper papers . . . .

In October 1999, Ndoc Kodra's wife was taking their son to school in Shkoder by bicycle when Ahmet Leka hit them and threw them off of the bike. They landed in a ditch. Two days later, Ndoc Kodra saw Ahmet Leka while Ahmet Leka was working on his land. Two of Ahmet Leka's cousins arrived and put a gun to Ndoc Kodra's head. They kicked him and hit him in the face, breaking most of his teeth. Ndoc Kodra broke his upper jaw and he had a lot of cuts. As a result of this incident, Ndoc Kodra was hospitalized for four days.

In 2001, Ndoc Kodra was returning from church when Ahmet Leka and some friends pulled up in a car and surrounded him. They were carrying guns on their waists. They pushed him into a wall and accused him of stealing a cow and two sheep in the village of Shtoj. Ahmet Leka's friend punched Ndoc Kodra in the head, knocked him against the wall, smacked him in the face, and held Ndoc Kodra's hands on his back while telling Mr. Leka to hit him. Ndoc Kodra received several punches to the stomach and was kicked very hard in the genitals. The doctor told him he had serious wounds and internal bleeding in the genital area.

(Petitioners' Brief, pp. 17-19) (record citations omitted).

Kodra alleged that he was persecuted because of his religious and political beliefs; however, he also made several specific statements which indicate that he left Albania for economic reasons and because of his dispute with Leka. The BIA adopted the IJ's finding that the Kodras' testimony

was not fully credible. Kodra now argues that this finding was based on minor discrepancies in the record. However, some of those inconsistencies went to issues that were central to the merits of his claim, as they involved Kodra's reasons for leaving Albania and the reasons for his alleged persecution there. Hence, Kodra has not met his burden of showing that any reasonable adjudicator would be compelled to reach a different credibility finding than the IJ and the BIA. *See* 8 U.S.C. § 1252(b)(4)(B); *Yu v. Ashcroft*, 364 F.3d 700, 703-04 (6th Cir. 2004).

The BIA also found that Kodra would not have a persuasive claim, even if his allegations were credible. There is substantial support for the BIA's finding that Kodra was not mistreated in Albania because of his politics or religion, but rather because of the land dispute that he had with Leka. Thus, he has not demonstrated a reasonable fear that he will be persecuted in the future on account of a statutorily protected ground. *See* 8 U.S.C. § 1101(a)(42)(A). As a result, Kodra has not presented sufficient evidence to support his asylum claim. *See Rreshpja v. Gonzales*, 420 F.3d 551, 554-56 (6th Cir. 2005); *Marku v. Ashcroft*, 380 F.3d 982, 986-88 (6th Cir. 2004).

Kodra argues that his claim of religious persecution was supported by the testimony of an expert witness. However, the expert did not expressly state that Catholics were subject to persecution in Albania, and a 2002 State Department Country Report on Albania contains no indication of significant religious persecution there. Thus, there was substantial evidence to support the BIA's conclusion that Kodra did not have a reasonable fear of religious persecution in the future. *See Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004); *Koliada v. INS*, 259 F.3d 482, 487-88 (6th Cir. 2001).

Kodra argues that the BIA should have found that his alleged mistreatment rose to the level of religious persecution. The BIA, assuming arguendo, that the alleged beatings and other serious misconduct amounted to persecution, nevertheless found that Kodra was not entitled to asylum

because the persecution was based on his dispute with Leka, rather than on a statutorily protected ground. We must uphold this finding because it is based on substantial evidence in the record. *See Rreshpja*, 420 F.3d at 554-56; *Marku*, 380 F.3d at 986-88. Moreover, as Kodra has not established eligibility for asylum, he is necessarily unable to meet the more rigorous standard that is required for the withholding of removal. *See Mikhailevitch*, 146 F.3d at 390.

Finally, we note that the petitioners filed a motion to sever the children from their parents' case and to remand the children's case to the BIA for consideration of new evidence which indicates that they have been legally adopted by Merita's sister and her husband, Vera and George Kraynick, who are citizens of the United States living in Oregon. The proposed evidence also indicates that the Department of Homeland Security approved the children's applications for Relative Immigrant Visa Petitions on November 28, 2005, several months after the BIA dismissed their administrative appeal. The motion to sever and remand was denied by this panel on September 28, 2006 because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 prohibits a reviewing court from remanding a case to the BIA under 28 U.S.C. § 2347(c). 8 U.S.C. § 1252(a)(1) (1999).

For the reasons stated above, the petition for judicial review is denied. However, the mandate of this court is stayed for sixty days from the date of our decision here to allow the petitioners an opportunity to file a motion to reopen their case with the BIA or to seek any other administrative relief that may be available to them on behalf of the children.