NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0218n.06

No. 14-3291

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 19, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GUIQIN CHEN, | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **ON PETITION** FOR REVIEW |
| v. | ) | OF A DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, Attorney General, | ) | APPEALS |
| | ) | |
| **Respondent.** | ) | **OPINION** |
| | ) | |

**BEFORE: NORRIS, MOORE, and GIBBONS, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Guiqin Chen, a native and citizen of the People's Republic of China, petitions for review of an order of the Board of Immigration Appeals ("the Board") which dismissed his appeal from an Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

**I.**

Petitioner arrived in the United States in 2007 without being admitted or paroled. He conceded removability below. According to his subsequent hearing testimony, petitioner left China "seeking . . . freedom because China does not have freedom of speech, freedom of religious belief." Shortly after his arrival, he testified that he consulted an attorney in New York about obtaining political asylum but was told that he did not qualify because he had not been persecuted in his home country, a point that he does not contest on appeal.

After staying in New York for a few days, petitioner relocated to Kentucky. According to him, he became a Christian on October 4, 2010 when he attended church for the first time with his cousin's wife. He told his parents, who remained in China, that he had become a practicing Christian in January 2011. He was baptized on June 5, 2011. Petitioner's asylum and withholding of removal claims, as well as his claim under the CAT, are based upon his Christian faith and his fear of persecution on that account should he return to China.

Before rendering her decision, the Immigration Judge considered the following evidentiary materials: petitioner's hearing testimony; a letter from Betty Cutts, who studied English and the Bible with petitioner; a letter from Reverend Thelma Oney, who baptized petitioner and leads the church that he attends in Kentucky; various documents and country reports concerning the treatment of Christians in China.

In an oral decision, the Immigration Judge denied petitioner relief. With respect to his asylum application, she noted that it was filed more than a year after his asserted entry into the United States. Thus, in order for it to be timely, petitioner must show that changed circumstances warranted its consideration. *See* 8 U.S.C. § 1158(a)(2)(D)[1]. The Immigration Judge cited a Board decision, *Matter of T-M-H & S-W-C*, 25 I. & N. Dec. 193 (2010), which noted that waiting more than six months after a change in circumstances was unreasonable and that shorter periods "would be considered on a case-by-case basis." In this case, petitioner had waited more than six months and the Immigration Judge therefore concluded that the application for asylum was untimely.

---

[1] A petitioner may alternatively show extraordinary circumstances related to the delay in filing, but no such circumstances are claimed here.

Having disposed of the asylum claim, the Immigration Judge turned to withholding of removal, which is not subject to the one-year limitations period governing asylum claims. In order to prevail, petitioner must establish that his life or freedom would be threatened on account of a protected ground if he returned to China: in this case his religious beliefs. Because petitioner conceded that he had not been persecuted in the past, he is not entitled to a presumption of future persecution. While the Immigration Judge deemed petitioner's testimony to be credible, she denied his withholding of removal claim for the following reasons:

> [N]otwithstanding that respondent is credible and has corroborated his attendance at church, respondent has not met his burden of establishing by a clear probability that he would be persecuted in China should he return. Respondent has provided nothing from his family or friends in China and only submitted articles about the Chinese policies and their fear of crackdown by the Chinese government on Christians. Respondent has not established by any evidence that he personally would be subjected to the practice of persecution should he return to China. He has not defined the house church that he would go to or shown by any evidence that as a result of his attendance that he would be subject to persecution.

The Immigration Judge went on to note that all of petitioner's evidence was of a generic nature and faulted him for not providing declarations from his family. Moreover, she observed that "despite problems that are experienced in China, there are at least 50 to 70 million practitioners that exist in China going to underground or home churches."

Finally, the Immigration Judge rejected his CAT claim based on the lack of testimony or other evidence to show that he would more likely than not be tortured on his return. Petitioner has subsequently abandoned that claim.

The Board upheld the Immigration Judge's decision and dismissed the appeal. It concurred that the asylum application was time-barred but went on to explain that "even presuming for purposes of this appeal that the respondent is not time-barred from asylum, we agree with the Immigration Judge's ultimate determination that he did not demonstrate eligibility

for the forms of relief requested." Echoing the Immigration Judge, the Board noted the lack of specific, corroborating evidence showing that petitioner would personally be at risk based upon his Christian faith. Unlike the Immigration Judge, however, the Board analyzed the asylum claim on the merits despite initially agreeing that it was time-barred:

> In sum, upon our de novo review, we find that the respondent has not established eligibility for asylum. *See Lin v. Holder*, 565 F.3d 971, 975 (6th Cir. 2009) (upholding Immigration Judge's denial of asylum given that the applicant, despite being found credible, did not present sufficient corroboration to meet his burden of proof). As such, the respondent has necessarily failed to satisfy the higher burden for withholding of removal. We also note that the respondent does not raise any substantive claim for protection under the Convention Against Torture and, as such, that the application is not properly before us.

## II.

On appellate review, our task is to determine whether substantial evidence supports the Board's determination that petitioner failed to sustain his burdens of establishing eligibility for asylum and withholding of removal. *Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007). The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., instructs us that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In short, sufficient evidence exists, and we must affirm, if the findings are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 (1992)).

Where, as here, the Board reviews the Immigration Judge's decision and issues a separate opinion, rather than summarily affirming the Immigration Judge's decision, we review that decision as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). To the extent that the BIA has adopted the Immigration Judge's reasoning, however, we

also review the Immigration Judge's decision. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Questions of law are reviewed de novo, but substantial deference is given to the Board's interpretation of the INA and its applicable regulations. *Morgan*, 507 F.3d at 1057. "The [Board's] interpretation of the statute and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Id*. (citation and internal quotation marks omitted).

With these precepts in mind, we consider petitioner's asylum application and his request for withholding of removal.

**A.**

An applicant for asylum must qualify as a refugee, which the INA defines as a person unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The Attorney General or Secretary of Homeland Security retains discretion to grant asylum applications. 8 U.S.C. § 1158(b). The applicant bears the burden of establishing that he is entitled to asylum. 8 C.F.R. § 1208.13(a). Where, as here, the applicant has not suffered past persecution, he must show that he has a well-founded fear of future persecution based upon his refugee status. That fear must be both subjectively and objectively reasonable. *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005). In other words, he must actually fear persecution and must also show an "objective" situation under which that fear can be thought reasonable. *Id.*

In addition to these substantive considerations, an asylum seeker must demonstrate by clear and convincing evidence that he filed his application within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Pursuant to the REAL ID Act of 2005, we lack

5

jurisdiction to review the denial of asylum applications unless they raise "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). When a petition for review challenges factual or discretionary decisions, jurisdiction is lacking. *Mandebvu v. Holder*, 755 F.3d 417, 425-26 (6th Cir. 2014); *Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009).

As recounted earlier, the Immigration Judge concluded that petitioner had failed to show that he had filed his application within one year—a point that he does not contest—nor had he shown "the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D); *See Al-Ghorbani*, 585 F.3d at 992. The Immigration Judge's conclusion was fact-bound and did not rest upon a question of law. The Board affirmed this conclusion based on the reasoning of the Immigration Judge. Because the timeliness determination does not involve a matter of either statutory construction or raise a constitutional claim, we are without jurisdiction to entertain it on appeal and therefore dismiss his asylum claim on that basis.

**B.**

We now consider petitioner's contention that he is entitled to withholding of removal. Pursuant to the INA, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). However, the standard for entitlement to withholding of removal is more stringent than that for asylum: "The applicant must provide evidence showing that there is a 'clear probability' that his or her life would be threatened on account of race,

religion, nationality, membership in a particular social group, or political opinion." *Ben Hamida*, 478 F.3d at 741.

As quoted earlier in this opinion, the Immigration Judge denied the withholding of removal claim largely based upon her finding of insufficient corroborating evidence, a conclusion echoed by the Board albeit in the context of petitioner's asylum claim. Specifically, the Immigration Judge and the Board faulted petitioner for not providing any evidence to support his contention that he personally would be placed at risk based upon his religious beliefs if he were to be repatriated. On appeal, he concedes that he did not do so, but argues that the documentation that he provided about conditions in China is sufficient to establish a "pattern and practice" of persecution by the Chinese government. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A) (applicant need not provide evidence that he would be singled out for persecution if he "establishes that there is a pattern and practice" of persecution in his country of similarly situated individuals).

With respect to his failure to designate what house church he would attend in China, he makes the argument that he defined the kind of church he would attend, although he did not identify a specific church. He has, however, described the church he is attending in Kentucky, which the Immigration Judge acknowledged.

Turning to the lack of corroborating evidence in the way of statements from family members, he notes that the Immigration Judge did not raise the issue of their availability. He cites *In Re S-M-J-*, 21 I. & N. Dec. 722 (BIA 1997), for the proposition that the Immigration Judge had an affirmative duty to ask him for the evidence she faulted him for not providing. However, *In Re S-M-J-* explicitly avoids placing such a burden on the Immigration Judge. *Id.* at 727-28. Another case relied upon by petitioner, *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir.

2009), simply states that, where it is reasonable to expect corroborating information, that material should be provided.

Finally, petitioner faults the government for focusing on a single sentence from the International Religious Freedom Report included in the record, which the Immigration Judge cited in her decision: "despite problems that are experienced in China, there are at least 50 to 70 million practitioners that exist in China going to underground him churches." Petitioner argues that this figure is taken out of context and directs us to the Report itself, which provides as follows:

> According to June 2010 State Administration for Religious Affairs statistics, the official Protestant population is 16 million. Government officials stated there are more than 50,000 Protestant churches registered under the Three-Self Patriotic Movement (TSPM), the state-approved Protestant patriotic association, and 18 TSPM theological schools. The Pew Research Center estimated in 2007 that 50 million to 70 million Christians practice in unregistered religious gatherings, also known as "house churches."

In petitioner's view, this evidence is not substantial enough to support the statement of the Immigration Judge regarding the number of "underground" Christians. In short, he contends that the characterization of the documentary record by the Immigration Judge and the Board was overly selective.

In this case, petitioner not only failed to provide corroborating evidence to the Immigration Judge, he did not address this deficit to the Board despite knowing that the Immigration Judge based her decision upon this evidentiary deficit. Moreover, petitioner neither identified where in China he would live, nor did he produce evidence that he personally could expect to be targeted.

While we are sympathetic to petitioner's desire to remain in the United States, he has failed to meet the evidentiary burden required to establish entitlement to withholding of removal.

**III.**

The petition for review is **denied**.