NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0495n.06

Case No. 25-3162

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 22, 2025
KELLY L. STEPHENS, Clerk

CRISTIAN CRISTOFER R. MACARIO-TZOC;
KEVIN MAURICIO ISMAEL MACARIO-
TZOC,

       Petitioners,

v.

PAMELA BONDI, Attorney General,

       Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE BOARD OF
IMMIGRATION APPEALS

OPINION

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Two Guatemalan brothers, Cristian and Kevin Macario-Tzoc, illegally entered the United States with their mother in 2014. After border patrol caught them, they applied to remain in the United States, asserting various grounds. An immigration judge denied their application in 2020, and the Board of Immigration Appeals dismissed their appeal in 2025. Now, the brothers petition this Court to review the Board's decision. Because the Board didn't err, we deny their petition.

## I.

## A.

Cristian Macario-Tzoc and Kevin Macario-Tzoc lived in Guatemala with their mother, Maria Tzoc Hernandez. They self-identify as indigenous, like 44 percent of Guatemalans. When Maria started a business making tortillas with her family, local gangs demanded weekly payments.

Maria paid them. Then the gangs demanded even more money. They abused Maria and threatened her children. After a gang member damaged her son's hand in 2014, Maria left Guatemala with her children and entered the United States illegally. At this time, Cristian was six and Kevin was three. They entered the Rio Grande Valley, and Border Patrol caught them immediately.

**B.**

The Department of Homeland Security served each brother with a Notice to Appear, initiating removal proceedings. At their removal hearing, an immigration judge sustained their removability. So the brothers applied for asylum, withholding of removal, and Convention Against Torture protection. They claimed that if they returned home, Guatemalan gangs would persecute them for their indigenous heritage and their membership in a particular social group ("Indigenous Maya Quiche family members of victims of extortion").

In 2020, an immigration judge rejected every claim. The judge found that the brothers' proposed particular social group was not cognizable because it circularly defined the persecuted group by the group's persecuted status. He also found that the persecution stemmed from the gangs' greed, not anti-indigenous perceptions or beliefs. So the judge ordered the government to remove the brothers back to Guatemala.

The brothers appealed to the Board of Immigration Appeals, dropping the Convention Against Torture claim while maintaining their other arguments. On February 18, 2025, the Board dismissed the appeal.

Now the brothers petition this Court to review the Board's decision.

**II.**

We review the Board's factual findings for substantial evidence and its legal conclusions de novo. *See Hernandez-Hernandez v. Garland*, 15 F.4th 685, 687 (6th Cir. 2021). We "also

review the immigration judge's decision to the extent that the Board adopted it." *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020) (citation omitted).

The brothers claim they should have received protection through asylum, withholding of removal, and the Convention Against Torture. They argue that the Board made three errors when it refused to grant those protections. The first two alleged errors touch both their asylum and withholding of removal claims. They say the Board erred by rejecting their proposed social group and misunderstanding the nexus between their persecution and their indigenous heritage. The third error reaches only their Convention Against Torture claim. They argue the Board erred by ignoring this claim.

## A.

First, the brothers say the Board erred in concluding that their proposed social group, "Indigenous Maya Quiche family members of victims of extortion," isn't cognizable. They contend that when the Board made its circularity decision, it failed to properly consider the relationship between their ethnicity and their persecution. We disagree. We review whether a particular social group is cognizable de novo. *See id.*

A particular social group must be cognizable. *See* 8 U.S.C. § 1101(a)(42); *Navas-Medina v. Barr*, 833 F. App'x 631, 633–34 (6th Cir. 2020) (denying review in a withholding of removal claim because the proposed group wasn't cognizable). A cognizable particular social group "shares a common, immutable and fundamental characteristic that either cannot be changed or should not be required to [change]." *Juan Antonio*, 959 F.3d at 789 (cleaned up). We've also held that a particular social group can't be "circular," meaning that it must share some narrowing characteristic other than the risk of persecution. *Id.* at 790; *see also Aviles-Solano v. Bondi*, No. 24-3610, 2025 WL 918461, at *5 (6th Cir. Mar. 26, 2025) (rejecting group defined by persecution

and threats); *Torres v. Sessions*, 728 F. App'x 584, 585–87 (6th Cir. 2018) (same); *Soto-Ambrocio v. Sessions*, 724 F. App'x 456, 458 (6th Cir. 2018) (same). Under this precedent, asylum-seekers can't point to future group persecution by using past persecution to manufacture the group. *See Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005).

But the brothers do just that—they define their group "by the fact that it suffers persecution." *Id.* So the Board rejected it. The brothers counter that they added the modifier "Indigenous Maya Quiche," which the Board didn't properly consider. Again, we disagree.

First, even when a modifier narrows a proposed group, that doesn't necessarily cure a circularity problem. *See Soto-Ambrocio*, 724 F. App'x at 458 ("young women from Guatemala" didn't sufficiently narrow the group); *Torres*, 728 F. App'x at 586–87 (same for "Mexican Nationals"); *Rreshpja,* 420 F.3d at 556 (same for young, attractive Albanian women).

Second, to the extent that "Indigenous Maya Quiche" marks a separate characteristic, the Board explicitly considered it. And the Board concluded that the brothers had failed to show any connection between mistreatment and that characteristic.

So we find no error in the Board's determination that the brothers failed to establish a cognizable particular social group.[1]

---

[1] Although appellants don't cite our recent decision in *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487 (6th Cir. 2024), there we vacated and remanded the Board's determination that a narrowly defined Guatemalan social group wasn't cognizable. But we didn't actually "make the cognizability determination" in that case—we remanded for further consideration. *Id.* at 500. We found error because the Board relied on overturned authority and, importantly, failed to consider the whole record. *See id.*, at 496–99. Here, by contrast, the Board cited applicable authority and "assess[ed] the plausibility of the application on the record as a whole." *Id.* at 496 (quoting *Zometa-Orellana v. Garland*, 19 F.4th 970, 979 (6th Cir. 2021)). It relied on facts from trial witnesses and other sources, not just the immigration judge's decision. And it fully considered the brothers' noncircular "Indigenous Maya Quiche" status, separate from their circular "family members of victims of extortion" status.

**B.**

Next, the brothers challenge the Board's "nexus" determinations. We review these factual determinations under the substantial-evidence standard. *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 846–47 (6th Cir. 2023). And we'll uphold the Board's decision "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To succeed, the brothers needed to show a nexus between their protected status and their persecution—i.e., that their protected status motivated their persecution. *See Cruz-Guzman v. Barr*, 920 F.3d 1033, 1037 (6th Cir. 2019). In our circuit, nexus comes in two varieties. Asylum claimants must show that their "membership in a protected group [is] 'one central reason' for persecution," while withholding of removal claimants must show that their "risk of persecution is 'because of' [their] protected status." *Patel v. Bondi*, 131 F.4th 377, 381 (6th Cir. 2025) (citation modified). The brothers sought both asylum and withholding of removal.

The Board found that the brothers' indigenous ethnicity could qualify as a protected ground, but it found no nexus between their ethnicity and their persecution. The brothers challenge this finding under both standards: asylum and withholding of removal.

They start with asylum, again saying the Board failed to properly consider their indigenous ethnicity as a protected ground. But rather than show that their ethnicity was "at least one central reason" for their persecution, *Guzman-Vazquez v. Barr*, 959 F.3d 253, 270 (6th Cir. 2020) (quoting 8 U.S.C. § 1158(b)(l)(B)(i)), the brothers make a different argument: Indigenous people face disproportionate disadvantages, and gangs disproportionately target indigenous people, so their indigenous ethnicity must have been a "central reason" for their persecution. This logic fails. The brothers can't establish the gangs' motive *as to them* merely by pointing to a disproportionate risk of harm faced by the 44 percent of Guatemalans who self-identify as indigenous. And they can't

5

rely on their conclusory claims that the gangs specifically target indigenous people, either. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). In fact, the record suggests the opposite. The transcript shows that the gangs threaten and extort everyone in the area. On appeal, the brothers still don't point to any evidence that their ethnicity motivated their persecution. This fails both nexus standards—asylum's "one central reason" standard and withholding of removal's "because of" standard. The Board didn't err.

Still, the brothers claim the Board applied an incorrect asylum standard by "requir[ing] [them] to prove that their race or group membership was the exclusive reason for the threats and violence they experienced." D.14, Pet. Br. p.17. This argument misunderstands the Board's decision. The Board never required an "exclusive reason" for persecution or "failed to appreciate that persecution can occur for multiple reasons." *Id.* at 17–18. Instead, it followed the correct legal standard. *See Patel*, 131 F.4th at 381–82. It looked for any evidence connecting the brothers' persecution to their group membership. When the Board found none, it dismissed their claims.

The brothers also make a short argument about their withholding of removal claim. They say that when the Board considered this claim, it didn't properly assess the likelihood that they would be persecuted again based on their indigenous identity. But the brothers failed to meet the nexus standard for their withholding of removal claim: They didn't show that gangs would persecute them "because of" their ethnicity. So since they failed to prove an essential element of their claim—that future persecution would happen "because of" their membership in a protected group—the Board had no legal obligation to assess the likelihood of persecution. *See id.*

## C.

Finally, the brothers argue that the Board should've considered their Convention Against Torture claim. But they never presented this claim to the Board. And we can't find that the Board committed an error when it didn't consider a claim that wasn't before it. So this argument fails.

## III.

The Board of Immigration Appeals didn't commit error when it dismissed the brothers' appeal.

The petition is DENIED.